■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant-Respondent, v GARY G. SMITH, Respondent-Appellant. — Order unanimously modified, on the law and facts, and, as modified, affirmed, in accordance with the following memorandum: Defendant was charged with the kidnapping, rape and sodomy of a 19-year-old girl who was endeavoring to get home after her car developed a mechanical problem. The charges arise from an incident which occurred on June 13, 1982 at approximately 3:00 A.M. At that time the victim was hitchhiking on a main highway in the Village of Geneseo when a man approached her on foot and offered to drive her home. After they talked for a while, she became suspicious and started to walk away. As she did, the man grabbed her, taped her mouth and pulled her into some bushes. He then taped her eyes and hands and dragged her across a park and into a truck. As she struggled her head was pushed back and she was able to see the truck. They drove around for approximately 30 minutes until they stopped at a house. Although still blindfolded, she was able to observe from underneath the tape that it was a "dark-colored home". Once in the house, she was raped and sodomized. Afterwards, she was again driven around for another 30 minutes and left off in the Village of Avon. She immediately reported the incident to the police giving them a description of her assailant, the vehicle and the house where she was attacked. Approximately 10 days later, a State Police investigator, acting on information obtained from the Sheriff, determined that a yellow pick-up truck matching the description given by the victim was registered to the defendant. The investigator picked up the victim and drove her to defendant's house. The house was located at the end of a long

driveway and set back a good distance from the road. Although he had no warrant, the investigator drove up the driveway to give the victim an opportunity to observe the house. From a conversation with defendant's wife, the officer ascertained that defendant owned a yellow pickup truck and was at that time working at a nearby construction site. Upon arriving at the work site, they observed several trucks, including a yellow pickup. While the victim remained in the car, the officer spoke with the defendant and advised him that he was investigating a rape in which the perpetrator used a yellow pickup truck. When the investigator returned to the police vehicle, the victim told him: "That man looks good" and that she felt he "was probably the assailant, the person who raped her."

Following legal proceedings which included an appeal to this court (*Matter of Gary S. v Houston,* 92 AD2d 749), a lineup was conducted at which complainant identified the defendant as the man who attacked her. At the conclusion of a *Wade* and suppression hearing, the court concluded that: (1) the one-on-one viewing of the defendant by the victim some 10 days following the crime was impermissibly suggestive and tainted her subsequent identification at the lineup; (2) the People failed to prove by clear and convincing evidence that there was any independent basis for an in-court identification apart from the tainted identification; and (3) that the police did not conduct an unreasonable search or seizure by entering upon defendant's property to observe defendant's house. The People appeal pursuant to CPL 450.20 (8) from the order which granted defendant's pretrial motion to suppress identification evidence. Defendant cross-appeals from the order which denied his motion to suppress evidence which was obtained after entry upon defendant's property by the State Police investigator.

A pretrial identification of a defendant is not admissible if it is the product of unnecessarily suggestive procedures (*Stovall v Denno,* 388 US 293; *People v Adams,* 53 NY2d 241, 251-252). "The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned" (*Stovall v Denno, supra,* p 302). In the absence of exigent circumstances, such one-on-one viewings, at the instance of the police, are strongly disfavored (*People v Adams, supra; People v Ford,* 100 AD2d 941, 942-943; *People v Thomas,* 72 AD2d 910, 912). However, such a showup held shortly after the commission of a crime when the victim's memory is still fresh may be permissible in the interest of prompt identification (*see, People v Love,* 57 NY2d 1023; *People v Brnja,* 50 NY2d 366, 372; *People v Smith,* 38 NY2d 882; *People v*

*Blake,* 35 NY2d 331, 336-337; *People v Kaigler,* 105 AD2d 1117). We agree that the viewing of this defendant by the victim at his work site some 10 days after the commission of the crime was unquestionably suggestive since the officer had just taken the victim to a house that matched the description of the crime scene and permitted her to view the defendant next to his yellow pickup truck; thus the court properly suppressed this out-of-court identification. This impermissibly suggestive one-on-one showup tainted the victim's subsequent identification at the pretrial lineup.

In our view, however, the in-court identification should not be excluded in spite of the suggestive pretrial procedure, as there is an independent basis for that identification (*see, People v Pleasant,* 54 NY2d 972, *cert denied* 455 US 924; *People v Adams, supra; People v Whisby,* 48 NY2d 834; *People v Ballott,* 20 NY2d 600, 606). Here, the victim testified that she had an opportunity to observe defendant's face at a close distance for a couple of minutes under "fair" lighting conditions before she was blind-folded. The record reveals that the victim was most observant and was able to give a fairly detailed physical description of her assailant including his age, height, weight and hair color. This testimony as to the victim's observations of the defendant just prior to the commission of the crime was sufficient to satisfy the People's burden of establishing an independent basis for identification of the defendant at trial (*see, People v Ballott, supra; People v Kaigler, supra*).

The court properly denied defendant's motion to suppress any evidence (including observations) made as a result of the police entry upon the defendant's driveway, accompanied by the victim. Although a private driveway leading to a home is not outside the area entitled to protection against unreasonable search and seizure (*People v Farenga,* 42 NY2d 1092, 1093; *People v Gravano,* 67 AD2d 988, *mod* 68 AD2d 895, *affd* 49 NY2d 1016; *cf. Oliver v United States,* 466 US 170), the key inquiry here is whether defendant had a reasonable expectation of privacy in this area (*Katz v United States,* 389 US 347, 360 [Harlan, J., concurring]; *People v Farenga, supra*). Defendant's house was set back a great distance from the road and was not visible from the public road. The house was only accessible by means of the long driveway entering upon defendant's property. The officer and the victim merely drove upon defendant's driveway and observed his house and the surrounding area. The intrusion, if any, was relatively limited, consisting of merely observing what would be visible to the casual caller, and did not extend into the primary building of the landowner or indeed into

any building at all (*cf. People v Doerbecker,* 39 NY2d 448, 452; *People v Gleeson,* 36 NY2d 462). Under these circumstances, defendant had no reasonable expectation of privacy against individuals making observations of his land and house from the driveway leading to his home. (Appeals from order of Livingston County Court, Houston, J. — motion to suppress.) Present — Callahan, J. P., Boomer, Green, O'Donnell and Schnepp, JJ.