THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v BRANDON WILLIAMS, Respondent. [905 NYS2d 185]—

Appeals by the People from (1) an order of the Supreme Court, Kings County, (Marrus, J.), entered June 29, 2009, which granted that branch of the defendant's omnibus motion which was to suppress evidence of a showup identification, and (2) an order of the same court (Tomei, J.), also entered June 29, 2009, which granted that branch of the defendant's omnibus motion which was to suppress an in-court identification of the defendant based upon the lack of an independent source.

Ordered that the appeal from the second order entered June

29, 2009, is dismissed as academic in light of our determination on the appeal from the first order entered June 29, 2009; and it is further,

Ordered that the first order entered June 29, 2009, is reversed, on the law and the facts, the second order entered June 29, 2009, is vacated, and the matter is remitted to the Supreme Court, Kings County, for further proceedings on the indictment.

As developed at a *Dunaway/Wade* hearing (*see Dunaway v New York*, 442 US 200 [1979]; *United States v Wade*, 388 US 218 [1967]) conducted by the Supreme Court, the victim in the instant matter stepped from an elevator on the fifth floor of his apartment building and was confronted by two men, one of whom was holding a gun. To avoid being shot, the victim grabbed the man with the gun as if "hugging" him, and struggled with the gunman until he was able to push the gunman down a flight of stairs. As the gunman fell backwards, he shot the victim twice in the upper legs. From there, the victim made his way to his apartment on the sixth floor, where a family member called 911.

Two police officers patrolling the area heard three to four gunshots from inside the building. Upon entering the building, they observed the defendant and another man running down the stairs. One of the officers identified himself as a police officer and, although the officers were in plain clothes, that officer displayed his police shield. The defendant slipped, was grabbed by one of the officers, and told not to move. The defendant raised his hands and was thereafter handcuffed behind his back. The other man turned, ran up the stairs, and escaped. The second police officer went up the stairs, found a trail of blood near the victim's sixth floor apartment, located the victim in the apartment, and obtained from the victim a description of the two men that had been involved in the altercation. One of the descriptions matched the race and clothing of the defendant, who remained downstairs. The defendant was brought to the victim's apartment, whereupon the victim identified him as the shooter. The defendant's detention prior to the showup identification lasted approximately 10 to 15 minutes.

An investigative detention is constitutionally permissible only where it is based upon reasonable suspicion of criminal activity (*see People v Hicks*, 68 NY2d 234, 238 [1986]). The requirement of reasonable suspicion is satisfied where an officer has "that quantum of knowledge sufficient to induce an ordinarily prudent and cautious [person] under the circumstances to believe criminal activity is at hand" (*People v Woods*, 98 NY2d 627, 628 [2002] [internal quotation marks omitted]; *see People v*

*Warren*, 276 AD2d 505 [2000]). However, when police conduct an investigative stop, their conduct must remain "reasonably related to the circumstances surrounding the encounter," for "a stop which is justified at its inception may be rendered unlawful by unwarranted police action taken as the confrontation progresses" (*People v Finlayson*, 76 AD2d 670, 678 [1980], *cert denied* 450 US 931 [1981]; *see People v De Bour*, 40 NY2d 210, 219 [1976]).

The showup identification was suppressed, upon a finding that the conduct of the police in detaining, searching, and handcuffing the defendant for 10 to 15 minutes exceeded the scope of their authority as warranted by the information available to them, which ripened into an arrest that was not supported by probable cause (*see People v Ryan*, 12 NY3d 28, 31 [2009]; *People v Hicks*, 68 NY2d 234 240 [1986]; *People v De Bour*, 40 NY2d at 217; *People v Battaglia*, 82 AD2d 389, 396 [1981] [Hancock, J., dissenting], *revd on dissent of Hancock, J.*, 56 NY2d 558 [1982]; *People v Robinson*, 282 AD2d 75, 81 [2001]). We disagree.

In this case, a reasonable suspicion existed that the defendant was involved in criminal activity when two men, including the defendant, were observed running down the stairs of a building moments after the sound of three or four gunshots had been heard in the same building at approximately 3:35 A.M., and where one of the two men turned and ran back up the stairs when confronted by police who had identified themselves (*see People v De Bour*, 40 NY2d at 223). We note that the defendant argued that he was detained in the absence of either probable cause or reasonable suspicion for a total of less than the 10 to 15 minutes found by the hearing court, since a deduction should be made for the time it took for the defendant to be walked six flights up the stairs to the victim's apartment for the showup identification.

Accordingly, it was error to suppress the showup identification. The handcuffing of the defendant was undertaken to effect his nonarrest detention, and to ensure the officers' safety late at night at premises where multiple gunshots had just been fired (*see People v Allen*, 73 NY2d 378, 379-380 [1989]). Moreover, the period in which the defendant was detained downstairs was not more than a few minutes, the scene under investigation and the defendant were in close proximity to each other, the defendant was not questioned while detained and was not transported elsewhere, the sound of gunshots suggested potentially serious crimes, and a less intrusive means of fulfilling the police investigation was not readily apparent (*see People*

*v Blas*, 70 AD3d 846 [2010]; *People v Hicks*, 68 NY2d at 243; *People v Boyd*, 272 AD2d 898, 899 [2000]; *People v Pinkney*, 156 AD2d 182 [1989]).

We further find that, under the circumstances presented, the showup identification procedures were conducted for the purpose of securing a prompt and reliable identification, and were not unduly suggestive (*see People v Duuvon*, 77 NY2d 541, 543 [1991]).

In light of our determination with respect to the propriety of the showup identification, the issue concerning the propriety of the proposed independent source identification has been rendered academic.

Accordingly, the matter must be remitted to the Supreme Court, Kings County, for further proceedings on the indictment. Rivera, J.P., Dillon, Florio and Balkin, JJ., concur.