SUPREME COURT OF THE STATE OF NEW YORK
*Appellate Division, Fourth Judicial Department*

741
KA 12-01873
PRESENT: SCUDDER, P.J., CENTRA, PERADOTTO, LINDLEY, AND WHALEN, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                      MEMORANDUM AND ORDER

JOHN C. HOWARD, JR., DEFENDANT-APPELLANT.

---

TIMOTHY P. DONAHER, PUBLIC DEFENDER, ROCHESTER (DREW DUBRIN OF
COUNSEL), FOR DEFENDANT-APPELLANT.

SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (NANCY GILLIGAN OF
COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Supreme Court, Monroe County
(Thomas E. Moran, J.), rendered August 6, 2012. The judgment
convicted defendant, upon his plea of guilty, of burglary in the third
degree, criminal mischief in the third degree and petit larceny.

It is hereby ORDERED that the judgment so appealed from is
unanimously affirmed.

Memorandum: On appeal from a judgment convicting him upon a plea
of guilty of burglary in the third degree (Penal Law § 140.20),
criminal mischief in the third degree (§ 145.05 [2]) and petit larceny
(§ 155.25), defendant contends that Supreme Court erred in refusing to
suppress physical evidence seized by the police as the result of an
unlawful stop, detention, and arrest. We reject that contention.

According to the evidence presented at the suppression hearing,
the Rochester Police Department received a call at approximately 10:00
a.m. that two black males had been seen walking around a neighborhood
carrying bags and that they had gone behind one particular residence
on Robin Street. The responding officer observed two men matching
that description coming down the driveway of another residence on
Robin Street. The officer, who was aware that there had been other
burglaries in the surrounding area where copper plumbing had been
targeted, approached the men and asked them "what they were doing."
The men responded that they were walking around the area looking for
copper plumbing. The officer observed that defendant was carrying a
book bag, and that the other man was carrying a three-foot-long duffel
bag. The officer then asked "what was in the bag," and the men
responded that they had copper plumbing. Without further prompting,
the man with defendant opened the duffel bag and showed the officer
its contents, which consisted of numerous copper pipes of "different
sizes[ and] lengths," with no other type of scrap metal. Within two

or three minutes of the officer's initial approach, her sergeant arrived on the scene. After frisking the men, the officer and sergeant placed the men in their patrol vehicles. The officer was unable to recall whether the men were handcuffed before being placed in the patrol vehicles. It is undisputed, however, that the two men were unable to exit the patrol vehicles from the inside.

Immediately after placing the men in the patrol vehicles, the officer and her sergeant checked the residence, whereupon they noticed that a window next to the side door of the residence was broken and the door was unlocked. The officer and her sergeant entered the residence and proceeded to the basement, where they noticed water running from copper pipes that had recently been cut, and they observed that the water was just beginning to spread on the basement floor. The pipes in the basement appeared to be the same size and description as those seen by the officer in the duffel bag. At that point, the officer and her sergeant returned to their vehicles, drove to the police station, and placed both men under arrest.

It is well established that, in evaluating the legality of police conduct, we "must determine whether the action taken was justified in its inception and at every subsequent stage of the encounter" (*People v Nicodemus*, 247 AD2d 833, 835, *lv denied* 92 NY2d 858, citing *People v De Bour*, 40 NY2d 210, 215). Here, contrary to defendant's contention, we conclude that "the information provided in the . . . dispatch coupled with the officer['s] observations provided the [officer] with 'an objective, credible reason for initially approaching defendant [and the other man] and requesting information from [them]' " (*People v Burnett*, 126 AD3d 1491, 1492), and that the officer's first inquiry was a "nonthreatening question[] not indicative of criminality, and thus w[as] justified as a level one inquiry" (*People v Doll*, 98 AD3d 356, 367, *affd* 21 NY3d 665, *rearg denied* 22 NY3d 1053, *cert denied* ___ US ___, 134 S Ct 1552, citing *People v Hollman*, 79 NY2d 181, 185). We further conclude that the answer to that inquiry provided the officer with the requisite founded suspicion that criminal activity was afoot to justify her subsequent common-law inquiry regarding the contents of the bag (*see generally Hollman*, 79 NY2d at 191-192).

Contrary to defendant's contention, he was not subjected to a de facto arrest when he was placed in the back seat of the patrol vehicle. We conclude that "the police action fell short of the level of intrusion upon defendant's liberty and privacy that constitutes an arrest" (*People v Hicks*, 68 NY2d 234, 240; *see generally People v Yukl*, 25 NY2d 585, 589, *cert denied* 400 US 851). Here, the brief investigative detention of defendant by the police was "justified by reasonable suspicion that a crime [had] been, [was] being or [was] about to be committed" (*People v Roque*, 99 NY2d 50, 54; *see People v Williams*, 73 AD3d 1097, 1098, *lv denied* 15 NY3d 779), i.e., "that quantum of knowledge sufficient to induce an ordinarily prudent and cautious [person] under the circumstances to believe criminal activity is at hand" (*People v Woods*, 98 NY2d 627, 628 [internal quotation marks omitted]; *see e.g. Williams*, 73 AD3d at 1098-1099; *People v Mazza*, 246 AD2d 671, 672; *cf. People v Lee*, 96 AD3d 1522, 1525-1526). Indeed, after the man with defendant displayed the contents of the

duffel bag, the officer had reasonable suspicion that defendant and the other man had committed a crime.  The established circumstances at that point were that the officer had received a report that suspicious individuals carrying bags had gone behind a residence in an area where burglaries targeting copper pipe had previously occurred; the officer observed two men matching the description coming down a driveway carrying bags; the two men admitted that they were walking around looking for copper plumbing; and the contents of the duffel bag revealed their actual possession of numerous copper pipes of various sizes with no indication of other scrap metals.  Under these circumstances, we conclude that the temporary detention of defendant was proper as "part of a continuum of permissible police intrusions in response to escalating evidence of criminal activity" (*Roque*, 99 NY2d at 54).  Here, "the police diligently pursued a minimally intrusive means of investigation likely to confirm or dispel suspicion quickly, during which time it was necessary to detain the defendant" (*Hicks*, 68 NY2d at 242), and "a less intrusive means of fulfilling the police investigation was not readily apparent" (*Williams*, 73 AD3d at 1099).

Entered:  June 19, 2015                          Frances E. Cafarell
                                                 Clerk of the Court