People v Floyd (2018 NY Slip Op 00727)





People v Floyd


2018 NY Slip Op 00727


Decided on February 2, 2018


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 2, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., PERADOTTO, DEJOSEPH, NEMOYER, AND TROUTMAN, JJ.


1342 KA 16-00008

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
MICHAEL FLOYD, DEFENDANT-APPELLANT. 






THE LEGAL AID BUREAU OF BUFFALO, INC., BUFFALO (ROBERT L. KEMP OF COUNSEL), FOR DEFENDANT-APPELLANT.
JOHN J. FLYNN, DISTRICT ATTORNEY, BUFFALO (STEPHEN EARNHART OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Supreme Court, Erie County (Christopher J. Burns, J.), rendered December 15, 2015. The judgment convicted defendant, upon his plea of guilty, of criminal possession of a weapon in the second degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.
Memorandum: On appeal from a judgment convicting him upon his plea of guilty of criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]), defendant contends that Supreme Court erred in refusing to suppress physical evidence and statements obtained by the police following the stop of a vehicle in which defendant was a passenger. We reject that contention.
At the suppression hearing, a police officer who was present on the morning of defendant's arrest testified that, at approximately 1:00 a.m., he and other officers were at the intersection of Ashley and Person Streets in the City of Buffalo investigating an unrelated crime. The officer had been at that location for approximately 30 minutes and had not observed any foot or vehicle traffic. He also was familiar with "that area," and knew that a person must travel north to Broadway in order to leave the area. Suddenly, the officer heard "several" gunshots coming from no farther than one city block south of his location. He and another officer "immediately" entered their patrol vehicle and headed south on Person Street. The officer then observed a vehicle driving north on Person Street at 40 or 45 miles per hour, headed toward Broadway and away from the direction of the gunshots. The officer maneuvered his patrol vehicle to block the path of the oncoming vehicle, which came to a stop. The officer exited his patrol vehicle and asked defendant, who was seated in the passenger seat of the stopped vehicle, to show his hands. Defendant complied, but also spoke "garbled" words that the officer could not understand. The officer asked defendant to step out of the vehicle, laid him face down on the ground, and handcuffed him. When the officer stood up, he noticed the black handle of a gun underneath the passenger seat of the vehicle. Before advising defendant of his Miranda rights, the officer asked him whether anyone had been shot, and defendant responded that "nobody was shot."
The court properly refused to suppress the physical evidence and defendant's statements. It is well established that the police may stop a vehicle "when there exists at least a reasonable suspicion that the driver or occupants of the vehicle have committed, are committing, or are about to commit a crime" (People v Spencer, 84 NY2d 749, 753 [1995], cert denied 516 US 905 [1995]; see People v Lopez, 149 AD3d 1545, 1547 [4th Dept 2017]). "A police officer's suspicion may be characterized as reasonable when it is based upon specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion" (People v Taylor, 31 AD3d 1141, 1142, [4th Dept 2006] [internal quotation marks omitted]; see Terry v Ohio, 392 US 1, 21 [1968]). Here, in light of the officer's testimony that, only seconds after he heard nearby gunshots, he observed a vehicle speeding away from the area [*2]and no other persons or vehicles had been observed in the area for approximately half an hour, we conclude that the officer had reasonable suspicion that an occupant of that vehicle had committed a crime (see People v Wingfield, 88 AD3d 537, 537 [1st Dept 2011], lv denied 18 NY3d 863 [2011]; People v Williams, 73 AD3d 1097, 1099 [2d Dept 2010], lv dismissed 15 NY3d 779 [2010]; see also People v Alston, 23 AD3d 487, 488 [2d Dept 2005], lv denied 6 NY3d 808 [2006]). The subsequent use of handcuffs to restrain defendant was justified inasmuch as it was "undertaken to effect his nonarrest detention, and to ensure the officers' safety late at night [in the vicinity of] premises where multiple gunshots had just been fired" (Williams, 73 AD3d at 1099; see People v Allen, 73 NY2d 378, 379-380 [1989]).
Insofar as defendant contends that the court erred in refusing to suppress the pre-Miranda statement that he made in response to a question from the officer, that contention was raised for the first time in defendant's reply brief and thus is not properly before us (see People v Ford, 69 NY2d 775, 777 [1987], rearg denied 69 NY2d 985 [1987]; People v Kreutter, 121 AD3d 1534, 1535 [4th Dept 2014], lv denied 25 NY3d 990 [2015]). In any event, we conclude that his contention lacks merit inasmuch as the public safety exception to the Miranda rule applies to the officer's question (see People v Rose, 129 AD3d 1631, 1632 [4th Dept 2015], lv denied 27 NY3d 1005 [2016]).
Entered: February 2, 2018
Mark W. Bennett
Clerk of the Court