People v Griffin (2020 NY Slip Op 06882)





People v Griffin


2020 NY Slip Op 06882


Decided on November 20, 2020


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on November 20, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., CENTRA, NEMOYER, CURRAN, AND WINSLOW, JJ.


573 KA 18-01620

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
KEITH GRIFFIN, DEFENDANT-APPELLANT. 






THE LEGAL AID BUREAU OF BUFFALO, INC., BUFFALO (ERIN A. KULESUS OF COUNSEL), FOR DEFENDANT-APPELLANT. 
JOHN J. FLYNN, DISTRICT ATTORNEY, BUFFALO (DANIELLE PHILLIPS OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Erie County Court (Kenneth F. Case, J.), rendered August 15, 2018. The judgment convicted defendant, upon his plea of guilty, of criminal possession of a weapon in the second degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.
Memorandum: Defendant appeals from a judgment convicting him, upon his plea of guilty, of criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]). We reject defendant's contention that County Court erred in refusing to suppress a handgun and his statements to the police. Contrary to defendant's contention, the court properly determined that the police conduct was justified in its inception and . . . reasonably related in scope to the circumstances [that] rendered its initiation permissible (People v De Bour, 40 NY2d 210, 222 [1976]). The 911 caller who reported the incident identified herself as the mother of the victim and indicated that the victim was being subjected to domestic violence by her boyfriend at a specified address, thereby providing sufficient "self-identifying information" to support the court's determination that "the call was not a truly anonymous one, and [that] the police were justified in acting on such information" (People v Dixon, 289 AD2d 937, 937, 938 [4th Dept 2001], lv denied 98 NY2d 637 [2002]; see also People v Van Every, 1 AD3d 977, 978 [4th Dept 2003], lv denied 1 NY3d 602 [2004]). The officers' prior knowledge of the residents of the address given by the 911 caller, specifically that defendant was the boyfriend of the reported victim and that the pair resided together at the address given, allowed the officers to identify defendant as the individual suspected of hitting or "jumping on" the reported victim. Thus, at the time the officers arrived at the location in response to the dispatch for a "violent domestic," they possessed a "reasonable suspicion that [defendant] was involved in a felony or misdemeanor" (People v Moore, 6 NY3d 496, 499 [2006]).
When the officers arrived at the scene shortly after 11:30 p.m., they observed defendant standing behind a minivan that was parked in the driveway. Initially, defendant was visible to the responding officers from about the waist up. Upon seeing the officers, however, defendant crouched behind the minivan out of the officers' sight for a few seconds before standing up again. Based on the totality of the circumstances—including the short period of time between the 911 call, the dispatch for a "violent domestic," and the arrival of the police officers at the reported location; the presence of defendant and his girlfriend in the driveway at that location; the responding officers' knowledge of and familiarity with defendant and his girlfriend and the fact that the officers had responded to the same location earlier that night; and defendant's act of crouching behind the minivan when he saw the officers arriving—the officer's verbal command for defendant to emerge from behind the vehicle and place his hands on the side of a house was a reasonably tailored intrusion on defendant's freedom of movement consistent with a level three encounter (see People v Camber, 167 AD3d 1558, 1558-1559 [4th Dept 2018], lv denied 33 NY3d 946 [2019]; see generally De Bour, 40 NY2d at 223).
Contrary to defendant's further contention, he was not subjected to an unlawful arrest when he was handcuffed, pat frisked, and placed in the back of a patrol vehicle. It is well established that not every forcible detention constitutes an arrest (People v Drake, 93 AD3d 1158, 1159 [4th Dept 2012], lv denied 19 NY3d 1102 [2012];see People v Hicks, 68 NY2d 234, 239 [1986]) and that officers may handcuff a detainee out of concern for officer safety (People v Wiggins, 126 AD3d 1369, 1370 [4th Dept 2015]; see People v Allen, 73 NY2d 378, 379-380 [1989]). A corollary of the statutory right to temporarily detain for questioning is the authority to frisk if the officer reasonably suspects that he [or she] is in danger of physical injury by virtue of the detainee being armed (De Bour, 40 NY2d at 223; see Wiggins, 126 AD3d at 1370). In the context of this level three encounter—in which the officers were responding to a "violent domestic," defendant and his girlfriend were observed by the responding officers in proximity to one another in the driveway, it was dark outside, and defendant crouched behind a van upon seeing the police arrive—the officers had "reasonable suspicion to believe that defendant posed a threat to their safety" (People v Mack, 49 AD3d 1291, 1292 [4th Dept 2008], lv denied 10 NY3d 866 [2008]). Defendant was carrying something over his shoulder, and a pat frisk of his person was a reasonable measure taken by the officers to ensure that defendant was not armed with a weapon (see Camber, 167 AD3d at 1559; Mack, 49 AD3d at 1292).
Although the pat frisk of defendant's person did not reveal any weapons, his brief detention in the patrol vehicle was justified while the officers spoke to defendant and his girlfriend separately and investigated the report of domestic violence. Defendant had a history of fleeing from responding officers, and his brief continued detention was reasonable inasmuch as the officers diligently pursued a minimally intrusive means of investigation likely to confirm or dispel suspicion quickly (Hicks, 68 NY2d at 242; see Allen, 73 NY2d at 380) and  'a less intrusive means of fulfilling the police investigation was not readily apparent'  (People v Howard, 129 AD3d 1654, 1656 [4th Dept 2015], lv denied 27 NY3d 999 [2016]). Under these circumstances, we conclude that defendant was not under arrest when he was handcuffed, pat frisked, and placed in the patrol vehicle for an investigatory detention (see People v Pruitt, 158 AD3d 1138, 1139-1140 [4th Dept 2018], lv denied 31 NY3d 1120 [2018]; see also People v McCoy, 46 AD3d 1348, 1349 [4th Dept 2007], lv denied 10 NY3d 813 [2008]). The subsequent discovery by an officer of a handgun on the driveway in the same location where defendant had been observed crouching moments earlier gave the officers probable cause to believe defendant dropped the gun there when he saw the officers arrive at the location (see People v Smith, 167 AD3d 1505, 1507-1508 [4th Dept 2018], lv denied 33 NY3d 954 [2019]).
Contrary to defendant's further contention, the court properly refused to suppress the initial statements he made while detained in the patrol vehicle. Although defendant was at that time in custody for Miranda purposes, " 'both the elements of police "custody" and police "interrogation" must be present before law enforcement officials constitutionally are obligated to provide the procedural safeguards imposed upon them by Miranda' " (People v Hailey, 153 AD3d 1639, 1640 [4th Dept 2017], lv denied 30 NY3d 1060 [2017], quoting People v Huffman, 41 NY2d 29, 33 [1976]). Here, the only question asked of defendant prior to the administration of Miranda warnings was "What is going on?" We conclude that defendant's statements in reply were responses to [a] threshold inquir[y] by the [officer] that [was] intended to ascertain the nature of the situation during initial investigation of a crime, rather than to elicit evidence of a crime, and those statements thus were not subject to suppression (People v Mitchell, 132 AD3d 1413, 1414 [4th Dept 2015], lv denied 27 NY3d 1072 [2016] [internal quotation marks omitted]; see People v Spirles, 136 AD3d 1315, 1316 [4th Dept 2016], lv denied 27 NY3d 1007 [2016], cert denied — US &mdash, 137 S Ct 298 [2016]; People v Carbonaro, 134 AD3d 1543, 1547 [4th Dept 2015], lv denied 27 NY3d 994 [2016], reconsideration denied 27 NY3d 1149 [2016]). Defendant was advised of and waived his Miranda rights before he was asked any further questions by either the officers at the scene or the detective at the police station.
Defendant further contends that the action of the officer in signaling to the other officers at the scene that he found a handgun in the driveway was the functional equivalent of interrogation. That contention is not preserved for our review inasmuch as defendant failed to raise it in his omnibus motion or before the suppression court (see generally People v White, 128 AD3d 1457, 1459 [4th Dept 2015], lv denied 26 NY3d 1012 [2015]). We decline to exercise our power to review that contention as a matter of discretion in the interest of justice (see CPL 470.15 [3] [c]).
Defendant also contends that the court erred in refusing to suppress the handgun on the ground that the officer's discovery of it was the result of an unlawful warrantless search of the curtilage of his home. We reject that contention. "Although a private driveway leading to a home is not outside the area entitled to protection against unreasonable search and seizure . . . , the key inquiry . . . is whether defendant had a reasonable expectation of privacy in this area" (People v Smith, 109 AD2d 1096, 1098 [4th Dept 1985]). Here, the record establishes that an officer standing "a couple feet" away from the minivan parked in defendant's driveway observed the handgun on the surface of the driveway below the front bumper of the minivan, which was "the same location" where defendant had crouched when he first saw the officers arriving. The driveway was adjacent to defendant's property on the right and the neighboring house on the left, and it was connected to the public sidewalk in the front. The rear of the parked minivan was approximately at the sidewalk, and the front bumper was approximately "halfway up the driveway" between the two houses. The handgun, therefore, was approximately a minivan's length away from the sidewalk, between defendant's house and the house next door. The area was used for vehicle parking, it was not fenced or gated, and there were no signs or notices evidencing any intent to exclude the public from the area. The area was illuminated by the light from the streetlights. Thus, we conclude that the record supports the court's determination that defendant lacked a reasonable expectation of privacy in the area where the handgun was observed by the officer (see People v Reed, 115 AD3d 1334, 1337 [4th Dept 2014], lv denied 23 NY3d 1024 [2014]; People v Versaggi, 296 AD2d 429, 429 [2d Dept 2002], lv denied 98 NY2d 714 [2002]; People v Warmuth, 187 AD2d 473, 474 [2d Dept 1992], lv denied 81 NY2d 894 [1993]; cf. Collins v Virginia, — US — , 138 S Ct 1663, 1670-1671 [2018]; United States v Alexander, 888 F3d 628, 633-634 [2d Cir 2018]).
Even assuming, arguendo, that defendant had established standing to challenge the search of his driveway, the record supports the suppression court's determination that the handgun was not unlawfully seized because "[t]he officer who found the firearm did nothing other than to look at the ground to discover it." The officer was lawfully in a position to view the handgun, had lawful access to it, and its incriminating nature was immediately apparent (see generally People v Brown, 96 NY2d 80, 88-89 [2001]; People v Bishop, 161 AD3d 1547, 1547 [4th Dept 2018], lv denied 32 NY3d 1002 [2018]).
Inasmuch as there was no unlawful police conduct with respect to defendant's investigative detention, his initial statements to the officer, or the seizure of the handgun, his further contention that his subsequent statements to police should have been suppressed as tainted by unlawful police conduct is necessarily without merit (see People v Bethany, 144 AD3d 1666, 1668 [4th Dept 2016], lv denied 29 NY3d 996 [2017], cert denied — US &mdash, 138 S Ct 1571 [2018]).
Entered: November 20, 2020
Mark W. Bennett
Clerk of the Court