People v Caballero (2021 NY Slip Op 06509)





People v Caballero


2021 NY Slip Op 06509


Decided on November 19, 2021


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on November 19, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CENTRA, J.P., LINDLEY, CURRAN, TROUTMAN, AND DEJOSEPH, JJ.


928 KA 19-00888

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
LUIS CABALLERO, DEFENDANT-APPELLANT. 






THE LEGAL AID BUREAU OF BUFFALO, INC., BUFFALO (ROBERT L. KEMP OF COUNSEL), FOR DEFENDANT-APPELLANT.
JOHN J. FLYNN, DISTRICT ATTORNEY, BUFFALO (DANIELLE E. PHILLIPS OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Supreme Court, Erie County (Russell P. Buscaglia, A.J.), rendered March 6, 2019. The judgment convicted defendant upon a nonjury verdict of predatory sexual assault against a child and criminal sexual act in the first degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously modified as a matter of discretion in the interest of justice by reducing the sentence imposed for predatory sexual assault against a child under count one of the indictment to an indeterminate term of incarceration of 15 years to life and by reducing the sentence imposed for criminal sexual act in the first degree under count two of the indictment to a determinate term of incarceration of 15 years followed by five years of postrelease supervision, and as modified the judgment is affirmed.
Memorandum: On appeal from a judgment convicting him following a nonjury trial (Buscaglia, A.J.) of predatory sexual assault against a child (Penal Law § 130.96) and criminal sexual act in the first degree (§ 130.50 [1]), defendant contends that Supreme Court (Buscaglia, A.J.) erred in refusing to suppress his statements and DNA evidence obtained during the course of two police interviews. We reject that contention.
Contrary to defendant's contention, he was not illegally arrested before either of his interviews with police officers and as a result the court did not err in refusing to suppress his statements or the DNA evidence resulting from defendant's offer to provide a DNA sample. "[N]ot every forcible detention constitutes an arrest" (People v Drake, 93 AD3d 1158, 1159 [4th Dept 2012], lv denied 19 NY3d 1102 [2012]; see People v Hicks, 68 NY2d 234, 239-240 [1986]). Indeed, "officers may handcuff a detainee out of concern for officer safety" (People v Wiggins, 126 AD3d 1369, 1370 [4th Dept 2015]; see People v Griffin, 188 AD3d 1701, 1703 [4th Dept 2020], lv denied 36 NY3d 1050 [2021], cert denied — US &mdash, 141 S Ct 2358 [2021]).
Before the first interview, defendant attempted to evade police by hiding under a bed in his residence. Although he was forcibly removed from underneath the bed and handcuffed by an officer who had been granted permission to search the residence, the evidence at the suppression hearing established that the Spanish-speaking defendant was informed, through translation by the female occupants of the residence, that he was not being arrested, that he was merely wanted for questioning, that he had the right to refuse to accompany the officer, and that he would be brought home following the interview. In addition, the handcuffs were removed when defendant was brought to the interview room at police headquarters, and he was offered a ride home following that initial interview. At the time of the second interview, defendant was again informed, via translation by his girlfriend, of the circumstances of the interview, and he and his girlfriend voluntarily accompanied police officers to police headquarters. Neither individual was handcuffed. We note that defendant repeatedly denied any wrongdoing and did not make any incriminating statements during either interview. In our view, a reasonable person, innocent of [*2]any crime, would not have thought he or she was under arrest prior to either interview (see generally People v Yukl, 25 NY2d 585, 589 [1969], cert denied 400 US 851 [1970]).
Contrary to defendant's contention with respect to the first interview, we conclude that, " '[g]iven defendant's continuing consent [to accompany the police], and the circumstances that, at the [police station], defendant was neither handcuffed nor kept in a cell, the handcuffing of defendant for security reasons during the car trip did not constitute an arrest' " (People v Bridgefourth, 13 AD3d 1165, 1166 [4th Dept 2004], lv denied 4 NY3d 828 [2005], reconsideration denied 5 NY3d 760 [2005]; cf. People v Finch, 137 AD3d 1653, 1654-1655 [4th Dept 2016]; see generally People v Allen, 73 NY2d 378, 379-380 [1989]). Moreover, the physical removal of defendant from underneath the bed and the use of handcuffs before the first interview was warranted based on the "threat that defendant might take additional evasive action" (People v McDonald, 173 AD3d 1633, 1634 [4th Dept 2019], lv denied 34 NY3d 934 [2019]).
Defendant further contends that, given his difficulty in understanding the English language, the People failed to establish that he voluntarily waived his Miranda rights and, as a result, failed to establish that his statements and his offer to provide DNA evidence were voluntary. We reject that contention. " '[A] statement given freely and voluntarily' is admissible in evidence" (People v Boyd, 192 AD3d 1659, 1660 [4th Dept 2021], quoting Miranda v Arizona, 384 US 436, 478 [1966]). To meet their initial burden when seeking to admit in evidence statements by a defendant who has limited English language proficiency, "[t]he People must establish that the defendant grasped that he or she did not have to speak to the interrogator; that any statement might be used to the subject's disadvantage; and that an attorney's assistance would be provided upon request, at any time, and before questioning is continued" (People v Jin Cheng Lin, 26 NY3d 701, 726 [2016] [internal quotation marks omitted]; see People v Hinojoso-Soto, 161 AD3d 1541, 1542 [4th Dept 2018], lv denied 32 NY3d 938 [2018]).
Here, the People met their initial burden by introducing evidence establishing that bilingual police officers provided Miranda warnings in Spanish, and that defendant participated in the lengthy interviews without exhibiting any difficulty in comprehending or responding (see Hinojoso-Soto, 161 AD3d at 1542). Thereafter, "the burden of persuasion with respect to suppression shifted to defendant" (id. [internal quotation marks omitted]), who failed to establish any basis from which to conclude that his statements and DNA sample were not voluntarily given. Thus, viewing the totality of the circumstances (see People v Deitz, 148 AD3d 1653, 1653 [4th Dept 2017], lv denied 29 NY3d 1125 [2017]), we conclude that the court did not err in determining that defendant's waiver of his Miranda rights was voluntary (see Boyd, 192 AD3d at 1660-1661).
To the extent that defendant challenges the use of bilingual police officers as translators due to an alleged conflict of interest, that particular contention is not preserved for our review (see People v Valverde, 13 AD3d 658, 659 [2d Dept 2004], lv denied 4 NY3d 836 [2005]). In any event, it lacks merit (see People v Esquerdo, 71 AD3d 1424, 1425 [4th Dept 2010], lv denied 14 NY3d 887 [2010]; Valverde, 13 AD3d at 659).
Defendant further contends that the court (Eagan, A.J.) erred in permitting the People to introduce certain Molineux evidence concerning prior acts of sexual misconduct perpetrated by defendant against the victim. We likewise reject that contention. "Evidence of a defendant's prior bad acts may be admissible when it is relevant to a material issue in the case other than defendant's criminal propensity" (People v Dorm, 12 NY3d 16, 19 [2009]). Here, the victim's testimony concerning the uncharged acts was properly admitted "to complete the narrative of the events charged in the indictment . . . and [to] provide[] necessary background information" (People v Workman, 56 AD3d 1155, 1156 [4th Dept 2008], lv denied 12 NY3d 789 [2009] [internal quotation marks omitted]; see People v Feliciano, 196 AD3d 1030, 1031 [4th Dept 2021]). It also served to place "the charged conduct in context" (Dorm, 12 NY3d at 19; see People v Leeson, 12 NY3d 823, 827 [2009]).
Contrary to defendant's contention, "the probative value of that evidence outweighed its potential for prejudice" (Feliciano, 196 AD3d at 1031; see generally People v Alvino, 71 NY2d 233, 242 [1987]), especially given the presumption in a bench trial that the court has considered only competent evidence in reaching its verdict (see People v Dyson, 169 AD3d 917, 918 [2d [*3]Dept 2019], lv denied 33 NY3d 975 [2019]; see also People v Malone, 196 AD3d 1054, 1055 [4th Dept 2021], lv denied 37 NY3d 1028 [2021]; see generally People v Moreno, 70 NY2d 403, 406 [1987]).
Viewing the evidence in the light most favorable to the People (see People v Williams, 84 NY2d 925, 926 [1994]), we conclude that it is legally sufficient to support the conviction (see generally People v Bleakley, 69 NY2d 490, 495 [1987]). In addition, viewing the evidence in light of the elements of the crimes in this nonjury trial (see People v Danielson, 9 NY3d 342, 349 [2007]), we conclude that the verdict is not against the weight of the evidence (see generally Bleakley, 69 NY2d at 495). "[I]ssues of credibility, as well as the weight to be accorded to the evidence presented, are primarily questions to be determined by the [factfinder]" (People v Witherspoon, 66 AD3d 1456, 1457 [4th Dept 2009], lv denied 13 NY3d 942 [2010] [internal quotation marks omitted]; see People v Smith, 145 AD3d 1628, 1629 [4th Dept 2016], lv denied 31 NY3d 1017 [2018]). To the extent that defendant contends that the victim's testimony is incredible as a matter of law, we reject that contention. "Testimony will be deemed incredible as a matter of law only where it is 'manifestly untrue, physically impossible, contrary to experience, or
self-contradictory' " (People v Smith, 73 AD3d 1469, 1470 [4th Dept 2010], lv denied 15 NY3d 778 [2010]). The victim's testimony does not meet that standard.
We agree with defendant, however, that the sentence is unduly harsh and severe, particularly in light of defendant's minimal and remote criminal history and the circumstances of the offense. Thus, as a matter of discretion in the interest of justice, we modify the judgment by reducing the sentence imposed for predatory sexual assault against a child under count one of the indictment to an indeterminate term of incarceration of 15 years to life and by reducing the sentence imposed for criminal sexual act in the first degree under count two of the indictment to a determinate term of incarceration of 15 years, to be followed by the five years of postrelease supervision imposed by the court (see CPL 470.15 [6] [b]; People v Delgado, 80 NY2d 780, 783 [1992]).
Entered: November 19, 2021
Ann Dillon Flynn
Clerk of the Court