People v Wright (2022 NY Slip Op 06585)

People v Wright

2022 NY Slip Op 06585

Decided on November 18, 2022

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on November 18, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: PERADOTTO, J.P., LINDLEY, CURRAN, WINSLOW, AND BANNISTER, JJ.

722 KA 22-00400

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
RODERICK WRIGHT, DEFENDANT-APPELLANT. 

JEREMY D. SCHWARTZ, LACKAWANNA, FOR DEFENDANT-APPELLANT.
JOHN J. FLYNN, DISTRICT ATTORNEY, BUFFALO (JERRY MARTI OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Erie County Court (Susan M. Eagan, J.), rendered October 13, 2021. The judgment convicted defendant, upon his plea of guilty, of criminal possession of a weapon in the second degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.
Memorandum: On appeal from a judgment convicting him, upon his plea of guilty, of criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]), defendant contends that County Court erred in refusing to suppress physical evidence and his statements as the fruit of an unlawful search and seizure. We reject that contention.
According to the evidence presented at the suppression hearing, a police officer (officer) with the Lancaster Police Department (LPD) was dispatched on an afternoon in late November 2020 to a motel in the Town of Lancaster (Lancaster) in response to a 911 call. In particular, the complainant had reported that a coworker—described as a black male with gold teeth operating a silver Ford SUV with out-of-state license plates—had threatened the complainant with a handgun. The information provided to the officer indicated that, while the complainant had not actually seen the handgun, the complainant believed the suspect had a handgun because the complainant heard a slide rack and the suspect tapping on a closed door with what sounded like a handgun while threatening to kill the complainant.
The officer was provided further information from the complainant that the suspect was staying at an inn located in Cheektowaga. Although the location of the inn was not along the officer's typical patrol route for the LPD, the officer was familiar with that area and noted that the inn was about one mile beyond the border with Lancaster. The officer proceeded in his patrol vehicle to the inn and pulled into the parking lot approximately 15 minutes after receiving the initial complaint. The officer immediately observed a silver Ford SUV with out-of-state license plates parked adjacent to the entrance of the parking lot. The officer parked directly in front of the SUV about 20 feet away and, as soon as he parked, he noticed that a black male with gold teeth—later identified as defendant—exited the SUV from the driver's door.
The officer exited his patrol vehicle and, from about midway between his patrol vehicle and the SUV, a distance of approximately 10 feet, the officer noticed a very strong odor of burnt marihuana. The officer confirmed that he was familiar with that smell from his extensive professional experience. The officer repeatedly insisted that the strong scent of marihuana was emanating from the vicinity of both defendant's person and the SUV. When pressed further on cross-examination, however, the officer agreed that it was "fair to say" that, when he was positioned 10 feet away as defendant stepped out of the SUV, he did not know whether the source of the marihuana scent was something in the SUV or something on defendant's person because defendant and the SUV were right next to each other at that point.
Given the possibility of a gun being involved and the odor of marihuana, the officer immediately directed defendant to the rear of the patrol vehicle and instructed defendant to place his hands on the trunk. Defendant ignored the instruction and, instead, continued to walk toward the inn as if conveying that the officer was wrongly hassling him. The officer attempted to physically place defendant's hands on the patrol vehicle, defendant began to resist by pulling his hands away, and the officer then forcibly handcuffed defendant. By that time, three other police officers from the LPD were on the scene, one of whom assisted the officer with defendant. After defendant was handcuffed, the officer frisked defendant's pockets. According to the officer, defendant was detained based on the strong odor of marihuana and the fact that he matched the description of the suspect who had reportedly threatened the complainant with a gun at the motel in Lancaster.
Two of the other police officers searched the SUV and discovered a handgun. As the officer was placing defendant, who was handcuffed, in the back of his patrol vehicle, one of the other police officers announced aloud that he had found a loaded handgun, and defendant spontaneously responded by saying "hey, that's my gun" as though questioning why the police were taking the handgun that belonged to him. Neither the officer nor any of the other police officers had their service weapons drawn during the interaction. Defendant did not produce a permit for the handgun.
Contrary to defendant's initial contention on appeal that the officer immediately initiated a level four intrusion, i.e., an arrest, without probable cause, we agree with the People that the officer engaged in a forcible nonarrest detention supported by reasonable suspicion. "It is well established that not every forcible detention constitutes an arrest" (People v Drake, 93 AD3d 1158, 1159 [4th Dept 2012], lv denied 19 NY3d 1102 [2012]; see People v Hicks, 68 NY2d 234, 239 [1986]), and that an officer may handcuff a detainee out of concern for officer safety (see People v Allen, 73 NY2d 378, 379-380 [1989]; People v Pruitt, 158 AD3d 1138, 1139 [4th Dept 2018], lv denied 31 NY3d 1120 [2018]; People v Wiggins, 126 AD3d 1369, 1370 [4th Dept 2015]). "A corollary of the statutory right to temporarily detain for questioning is the authority to frisk if the officer reasonably suspects that he is in danger of physical injury by virtue of the detainee being armed" (People v De Bour, 40 NY2d 210, 215, 223 [1976]; see Wiggins, 126 AD3d at 1370).
Here, based on the evidence adduced at the suppression hearing, we conclude that the court properly found that the encounter, from its outset, constituted a forcible stop and nonarrest detention of defendant (see People v Hough, 151 AD3d 1591, 1592 [4th Dept 2017], lv denied 30 NY3d 950 [2017]). In particular, contrary to defendant's contention, he was "not subjected to an unlawful de facto arrest when, after exiting his patrol vehicle and approaching defendant on foot, the officer [ultimately] handcuffed [defendant], conducted a pat frisk, and [started to] place[ him] in the back of the patrol vehicle" prior to discovery of the handgun (Pruitt, 158 AD3d at 1139; see People v Griffin, 188 AD3d 1701, 1703 [4th Dept 2020], lv denied 36 NY3d 1050 [2021], cert denied — US &mdash, 141 S Ct 2538 [2021]; People v Harmon, 170 AD3d 1674, 1675 [4th Dept 2019], lv denied 34 NY3d 932 [2019]; People v McCoy, 46 AD3d 1348, 1349 [4th Dept 2007], lv denied 10 NY3d 813 [2008]). Instead, given the detailed description by the known complainant that a person matching defendant's characteristics and location was in possession of and had threatened to use a handgun, along with the strong odor of marihuana emanating from defendant's vicinity and his evasive and resistant behavior when first confronted, the officer effectuated a forcible nonarrest detention—including through the use of handcuffs—to facilitate the investigation before the handgun was located (see Harmon, 170 AD3d at 1675; Pruitt, 158 AD3d at 1139; see also People v McKee, 174 AD3d 1444, 1445 [4th Dept 2019], lv denied 34 NY3d 982 [2019]; People v McDonald, 173 AD3d 1633, 1634 [4th Dept 2019], lv denied 34 NY3d 934 [2019]; see generally Allen, 73 NY2d at 379-380). In sum, "the police action fell short of the level of intrusion upon defendant's liberty and privacy that constitutes an arrest" (Hicks, 68 NY2d at 240; see People v Howard, 129 AD3d 1654, 1655-1656 [4th Dept 2015], lv denied 27 NY3d 999 [2016]; see generally People v Yukl, 25 NY2d 585, 589 [1969], cert denied 400 US 851 [1970]).
We further agree with the People that the forcible nonarrest detention was supported by the requisite reasonable suspicion (see generally People v Cooper, 196 AD3d 855, 857 [3d Dept 2021], lv denied 37 NY3d 1160 [2022]). A nonarrest investigative detention must be "justified by reasonable suspicion that a crime [had] been, [was] being or [was] about to be committed" [*2](People v Roque, 99 NY2d 50, 54 [2002]), i.e., "that quantum of knowledge sufficient to induce an ordinarily prudent and cautious [person] under the circumstances to believe criminal activity is at hand" (People v Woods, 98 NY2d 627, 628 [2002] [internal quotation marks omitted]; see Howard, 129 AD3d at 1656).
Here, we conclude that, "[b]ased upon the totality of the circumstances, including the short period of time between the 911 call [by the known complainant] reporting [that a specifically described male had] a handgun and the arrival of the police officer at the reported location [where the suspect was known to be staying], defendant's presence at that location, and the officer's observations that defendant's physical characteristics and [the vehicle he was exiting] matched the description of the suspect [and his SUV], the officer was justified in forcibly detaining defendant in order to quickly confirm or dispel [his] reasonable suspicion of defendant's possible [possession of a weapon]" (Pruitt, 158 AD3d at 1139 [internal quotation marks omitted]). To the extent that defendant contends that the information conveyed to the officer was insufficient to establish the requisite reasonable suspicion because the complainant only heard what sounded like a handgun behind a closed door and provided a name that the People did not prove was associated with defendant, we reject that contention. The information provided by the complainant, an identified person, was based upon his personal knowledge, included precise descriptions of particular sounds associated with named parts of a firearm, and accused defendant of committing a specific crime by threatening to kill him with a gun (see Penal Law § 265.03 [1] [b]). That information thus "provided the [police] with at least a reasonable suspicion that a crime had been, or was being, committed, [thereby] authorizing the detention" (People v Whorley, 125 AD3d 1484, 1485 [4th Dept 2015], lv denied 25 NY3d 1173 [2015]; see People v Clark, 191 AD3d 1485, 1486 [4th Dept 2021], lv denied 37 NY3d 954 [2021]). The fact that the People never proved that the name of the suspect provided by the complainant was associated with defendant is of no moment inasmuch as every other piece of detailed information provided by the complainant was confirmed by the officer's observations (see Whorley, 125 AD3d at 1485; see generally People v Argyris, 24 NY3d 1138, 1140-1141 [2014], rearg denied 24 NY3d 1211 [2015], cert denied 577 US 1069 [2016]).
Furthermore, at the time of the encounter, the officer's "detection of the odor of burning marihuana emanating from the vicinity of defendant . . . supplied the officer[] with [additional] reasonable suspicion of criminal activity sufficient to warrant stopping [and detaining defendant]" (Hough, 151 AD3d at 1592).
The next issue is whether, as defendant was being detained, the police lawfully searched the SUV where the handgun was located. The court decided that issue solely on the ground that the police had probable cause to search the vehicle based on the strong odor of marihuana emanating from both defendant and the SUV, and our review is therefore limited to that ground (see People v Clark, 171 AD3d 1530, 1532 [4th Dept 2019]; see generally People v Ingram, 18 NY3d 948, 949 [2012]; People v Concepcion, 17 NY3d 192, 195 [2011]).
As applicable to this case, "[t]he odor of marihuana emanating from a vehicle, when detected by an officer qualified by training and experience to recognize it, is sufficient to constitute probable cause to search a vehicle and its occupants" (People v Cuffie, 109 AD3d 1200, 1201 [4th Dept 2013], lv denied 22 NY3d 1087 [2014] [internal quotation marks omitted]; see People v Chestnut, 43 AD2d 260, 261 [1974], affd 36 NY2d 971 [1975]; People v Boswell, 197 AD3d 950, 951 [4th Dept 2021], lv denied 37 NY3d 1095 [2021]). Here, the officer testified that he was a 12½-year veteran police officer who was familiar with the smell of marihuana based on his extensive professional experience, and that he detected the strong odor of burnt marihuana emanating from both defendant and the SUV as he approached from about 10 feet away after defendant had exited the SUV. Defendant does not challenge the officer's testimony with respect to his training and experience (see People v Walker, 128 AD3d 1499, 1500 [4th Dept 2015], lv denied 26 NY3d 936 [2015]); instead, defendant contends that the proof was insufficient to establish probable cause to search the SUV because the officer could say only that the scent was emanating from defendant's person but not necessarily from the SUV.
We conclude that defendant's restrictive reading of the officer's testimony is not supported by the record, nor does the law support the conclusion that the police lacked probable cause here. The officer repeatedly insisted that he detected the scent of marihuana emanating from both defendant's person and the SUV (see People v Rasul, 121 AD3d 1413, 1416 [3d Dept [*3]2014]; cf. People v Smith, 98 AD3d 590, 591-592 [2d Dept 2012]) and, although he ultimately agreed on cross-examination that he could not know the precise location of the source of that scent, "[p]robable cause does not require proof sufficient to warrant a conviction beyond a reasonable doubt but merely information sufficient to support a reasonable belief that an offense has been or is being committed or that evidence of a crime may be found in a certain place" (People v Bigelow, 66 NY2d 417, 423 [1985] [emphasis added]). Contrary to defendant's contention, the officer's admission that, while the strength of the scent led him to conclude that the odor was coming from both defendant and the SUV, he could not olfactorily pinpoint the location of the source of the odor is materially different from testimony admitting that no scent whatsoever had been detected coming from the vehicle itself (cf. Smith, 98 AD3d at 591-592). Here, the fact that the scent was so strong, and permeated the area of both defendant and the SUV, was sufficient to support a reasonable belief that evidence of a crime may be found in the SUV (see People v Wright, 158 AD3d 1125, 1126-1127 [4th Dept 2018], lv denied 31 NY3d 1089 [2018]).
Inasmuch as the police had probable cause to search the SUV, the seizure of the handgun therein was lawful, and the police had probable cause to arrest defendant for criminal possession of a weapon (see Wiggins, 126 AD3d at 1370). Finally, contrary to defendant's contention, the officers from the LPD were authorized to arrest defendant in Cheektowaga outside the geographical area of their employment because they had probable cause to believe that defendant had committed the crime of criminal possession of a weapon (see CPL 140.10 [1] [b]; [3]; People v Nenni, 269 AD2d 785, 785 [4th Dept 2000], lv denied 95 NY2d 801 [2000]).
Entered: November 18, 2022
Ann Dillon Flynn
Clerk of the Court