OPINION OF THE COURT
Graffeo, J.
This appeal requires us to consider the admissibility of evidence seized as the result of an encounter between defendant and the police on a commercial passenger bus during a stopover in Albany, New York. Based on the particular facts and *524 circumstances of this case, we reverse the order of the Appellate Division which upheld defendant’s conviction.
According to findings of fact made by County Court, and undisturbed by the Appellate Division, at approximately 3:30 a.m. on January 23, 1997, an investigator from the Albany County Sheriffs Department boarded a bus which had arrived from New York City. The investigator, wearing civilian clothing with his police badge prominently displayed on his coat, was accompanied by two other officers. The investigator announced that they were conducting a drug interdiction and “asked everyone on board (approximately fifteen passengers) to produce bus tickets and identification. He then proceeded to the back of the bus to begin examining those items from each passenger.”
Walking to the rear of the bus, the investigator observed defendant and a female companion, sitting in the last row of seats, push a black object between them. He approached the two individuals and asked for their identification and bus tickets. The investigator then obtained consent to search defendant’s bag, which led to the discovery of a digital scale, and asked defendant and his companion to stand, at which time he saw a black jacket on defendant’s seat. The officer found more than two ounces of cocaine in the jacket pocket.
Defendant was indicted on one count of criminal possession of a controlled substance in the second degree and one count of criminal possession of a controlled substance in the third degree. County Court denied defendant’s motion to suppress the physical evidence seized by the police. Subsequently, defendant pleaded guilty to both charges and was sentenced as a second felony offender to concurrent prison sentences of 8V2 years to life and 8V2 to 17 years. The Appellate Division affirmed (274 AD2d 740), and a Judge of this Court granted defendant’s application for leave to appeal (95 NY2d 891).
Defendant asserts that police conduct in this case violated the rules regulating police-initiated encounters with civilians as set forth in People v De Bour (40 NY2d 210) and People v Hollman (79 NY2d 181). At the outset, we note that whether police conduct in any particular case conforms to De Bour is a mixed question of law and fact (see, e.g., People v Battaglia, 86 NY2d 755, 756; People v Alvaranga, 84 NY2d 985, 986). Therefore, our review is limited to whether there is evidence in the record supporting the lower courts’ determinations. Here we conclude there is not.
*525 Where police acting in their criminal law enforcement capacity initiate an encounter with private citizens, the propriety of the encounter must be assessed under the four-tiered analytical framework articulated in De Bour and reaffirmed in Hollman:
“If a police officer seeks simply to request information from an individual, that request must be supported by an objective, credible reason, not necessarily indicative of criminality. The common-law right of inquiry, a wholly separate level of contact, is ‘activated by a founded suspicion that criminal activity is afoot and permits a somewhat greater intrusion.’ Where a police officer has reasonable suspicion that a particular person was involved in a felony or misdemeanor, the officer is authorized to forcibly stop and detain that person. Finally, where the officer has probable cause to believe that a person has committed a crime, an arrest is authorized” (People v Hollman, 79 NY2d, at 184-185 [internal citation omitted], quoting People v De Bour, 40 NY2d, at 223).
It is well settled that when an officer asks an individual to provide identification or destination information during a police-initiated encounter, the request for information implicates the initial tier of De Bour analysis (see, e.g., People v Hollman, 79 NY2d, at 190-191). Although police officers have “fairly broad authority” to approach and pose questions, they may not do so on mere “whim or caprice”; the request must be based on “an articulable reason not necessarily related to criminality” (id., at 190).
The resolution of this case depends on when De Bour scrutiny was triggered and if, at that time, the police had an objective, credible reason to justify the request that all passengers produce tickets and identification. The People contend that the police did not approach any particular passenger until the investigator observed defendant and his companion secret a black object, which provided the investigator with an articulable reason to request information from defendant and his companion. But starting De Bour analysis at this juncture overlooks the fact, as found by County Court and the Appellate Division, that the investigator initially asked every one of the passengers to present documentation prior to any observations of passenger conduct. De Bour was triggered at that point. The *526 Appellate Division held that this inceptive request was “satisfied by the articulable reason that the officers were conducting drug interdiction on a commercial passenger bus traveling from New York City, a known source city for narcotic drugs” (People v McIntosh, 274 AD2d, at 741-742). Defendant argues that law enforcement knowledge regarding the origination of the bus was inadequate to establish a legal basis to ask everyone traveling on the bus to produce identification and a bus ticket. We agree with defendant.
We have never held that a police encounter was justified by anything so general as knowledge that an entire city is a known source of drugs. Even a discrete area of a city identified as a high crime area has not, by itself, been sufficient justification for informational requests of the type involved here. For example, in People v Hollman (79 NY2d, at 192-193), an undercover narcotics officer at the Port Authority Bus Terminal in New York City observed an individual and his companion standing 10 feet apart for several minutes with a bag between them. The officer watched as this person boarded a bus and placed the bag several seats away, and then saw him push his companion’s bag closer to his. These actions were deemed to provide the police with an objective credible reason for approaching the two men (see, id., at 193). In People v Reyes (83 NY2d 945, 946, cert denied 513 US 991), this Court held that a police officer’s request to stop was permissible where a person “was observed in a ‘drug-prone’ area walking away from a group of men and clutching the inside of his jacket beneath his armpit as a marked police van approached.” Similarly, the act of a person carrying “an apparently heavy, though not full, travel bag” while “walking in unison, as if marching in formation” with others in “an area known for its narcotics and weapons activities and the subject of a precinct alert that day” also warranted a police approach in Matter of James R. (76 NY2d 825, 826). And in People v De Bour, we held that police officers legitimately approached and inquired about a person’s identity where “[t]he encounter * * * occurred after midnight in an area known for its high incidence of drug activity and only after [the individual] had conspicuously crossed the street to avoid walking past the uniformed officers” (40 NY2d, at 220 [internal citation omitted]).
The events in all of these cases occurred in vicinities classified by police as “drug-prone” or with a high incidence of crime. Notably, we did not base our holdings on this factor alone. In determining the legality of an encounter under De Bour and *527 Hollman, it has been crucial whether a nexus to conduct existed, that is, whether the police were aware of or observed conduct which provided a particularized reason to request information. The fact that an encounter occurred in a high crime vicinity, without more, has not passed De Bour and Hollman scrutiny (cf., People v Holmes, 81 NY2d 1056, 1058).
A request for information might be justified, for instance, if the officers had a “tip” or information that drugs were being transported from New York City by bus that evening (see, People v Alvaranga, 84 NY2d, at 986), or if the police had observed defendant engaged in certain activity prior to boarding the bus and then questioned him on the bus (see, People v Hollman, 79 NY2d, at 192-193). Similarly, if the police had information that a fugitive was in the terminal, that could warrant the questioning of passengers. De Bour, in short, does not prevent police officers from following up on leads or from requesting information in countless situations where there is an objective, credible reason to question a person.
Here, the record does not reflect any reason for the request of all passengers to produce their tickets and identification, other than the fact the bus had departed from a place described by the investigator as “known as a source city for narcotics.” In the absence of any conduct by a passenger or other basis giving rise to a particularized reason for the encounter, the request of 15 passengers to produce documentation did not meet the De Bour standard.
Nor does the investigator’s observation of defendant pushing a black object legitimize his earlier request of all passengers. Since a police encounter cannot be validated by a later-acquired suspicion (see, People v De Bour, 40 NY2d, at 215-216), the investigator’s subsequent observations of defendant do not cleanse the initial request of its shortcomings under De Bour and Hollman.
We conclude that the procedure employed by three police officers in boarding the bus and requesting that all of the passengers produce tickets and identification was conducted without an objective, credible reason. It follows that the ensuing search of defendant’s bag and jacket was unlawful. In light of our determination, we need not consider defendant’s remaining constitutional challenges.
Accordingly, the order of the Appellate Division should be reversed, defendant’s guilty plea vacated, his motion to suppress-granted and the indictment dismissed.