# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**29**
**KA 13-02055**
PRESENT: WHALEN, P.J., CENTRA, PERADOTTO, CARNI, AND SCUDDER, JJ.
_____

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

                         V                          MEMORANDUM AND ORDER

DAMONE SAVAGE, DEFENDANT-APPELLANT.
_____

THE LEGAL AID BUREAU OF BUFFALO, INC., BUFFALO (KRISTIN M. PREVE OF COUNSEL), FOR DEFENDANT-APPELLANT.

FRANK A. SEDITA, III, DISTRICT ATTORNEY, BUFFALO (NICHOLAS T. TEXIDO OF COUNSEL), FOR RESPONDENT.
--------------------------------------------------------------------------------------------------------

Appeal from a judgment of the Supreme Court, Erie County (Russell P. Buscaglia, A.J.), rendered November 12, 2013. The judgment convicted defendant, upon his plea of guilty, of criminal possession of a weapon in the second degree.

It is hereby ORDERED that the judgment so appealed from is unanimously reversed on the law, the plea is vacated, the motion to suppress physical evidence and supplemental motion to suppress statements are granted, the indictment is dismissed, and the matter is remitted to Supreme Court, Erie County, for proceedings pursuant to CPL 470.45.

Memorandum: On appeal from a judgment convicting him upon his plea of guilty of criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]), defendant contends that Supreme Court erred in refusing to suppress physical evidence, i.e., a handgun, and his subsequent oral statements to the police because the police lacked an objective, credible reason to justify their initial approach and request for information. We agree.

The testimony at the suppression hearing established that at approximately 6:30 p.m. on January 18, 2013, a Buffalo police officer and his partner were conducting a traffic stop in the parking lot of a gas station when they observed defendant and two other men walking down the sidewalk on the other side of the street in a "higher crime area." According to the officer, defendant was "staring" at him and his partner or at their marked patrol vehicle. Upon concluding the traffic stop, the officers crossed the street in their vehicle in order to drive alongside the men, the officer asked, "what's up, guys?" from the rolled-down passenger window, and defendant then put his head down and started walking away at a faster pace. The officer thereafter observed defendant drop a gun holster to the ground and,

after exiting the vehicle and picking up the holster, the officer saw defendant discard a handgun into nearby bushes.  The officer's partner positioned the patrol vehicle to cut off defendant's path of travel, and defendant was eventually apprehended.

In evaluating police conduct, a court "must determine whether the action taken was justified in its inception and at every subsequent stage of the encounter" (*People v Nicodemus*, 247 AD2d 833, 835, *lv denied* 92 NY2d 858; *see People v De Bour*, 40 NY2d 210, 222-223).  At the first level of a police-civilian encounter, i.e., a request for information, a police officer may approach an individual "when there is some objective credible reason for that interference not necessarily indicative of criminality" (*De Bour*, 40 NY2d at 223), and "[t]he request may 'involve[] basic, nonthreatening questions regarding, for instance, identity, address or destination' " (*People v Garcia*, 20 NY3d 317, 322, quoting *People v Hollman*, 79 NY2d 181, 185).  Although the first level "sets a low bar for an initial encounter" (*People v Barksdale*, 26 NY3d 139, 143), the Court of Appeals has nevertheless observed that, "[i]n determining the legality of an encounter under *De Bour* and *Hollman*, it has been crucial whether a nexus to [defendant's] conduct existed, that is, whether the police were aware of or observed conduct which provided a particularized reason to request information.  The fact that an encounter occurred in a high crime vicinity, without more, has not passed *De Bour* and *Hollman* scrutiny" (*People v McIntosh*, 96 NY2d 521, 526-527).

Here, we conclude that the officers engaged in a level one approach and request for information when they concluded the traffic stop after observing defendant and the other men walking down the sidewalk, crossed the street in their marked patrol vehicle in order to drive alongside the men, and asked them the basic, nonthreatening question, "what's up, guys?" (*see People v Howard*, 129 AD3d 1654, 1654; *People v Johnston*, 103 AD3d 1202, 1203, *lv denied* 21 NY3d 912; *People v Carr*, 103 AD3d 1194, 1194).  Contrary to the People's contention, it cannot be said, under such circumstances, that the officers' approach and inquiry was merely a "friendly greeting" that did not constitute a request for information (*cf. People v Thornton*, 238 AD2d 33, 35).

We agree with defendant that the officers' conduct was not justified from its inception.  We conclude that merely staring at or otherwise looking in the direction of police officers or a patrol vehicle in a high crime area while continuing to proceed on one's way, absent any indicia of nervousness, evasive behavior, or other movements in response to seeing the police, i.e., "attendant circumstances . . . sufficient to arouse the officers' interest" (*De Bour*, 40 NY2d at 220), is insufficient to provide the police with the requisite "objective, credible reason, not necessarily indicative of criminality" to justify a level one encounter (*Hollman*, 79 NY2d at 184; *see De Bour*, 40 NY2d at 223; *cf. e.g. Matter of Demitrus B.*, 89 AD3d 1421, 1421-1422; *Matter of Steven McC.*, 304 AD2d 68, 72-73, *lv denied* 100 NY2d 511; *People v Randolph*, 278 AD2d 52, 52, *lv denied* 96 NY2d 762).  Here, beyond the fact that defendant had stared at the

police in a "higher crime area" while continuing to walk down the sidewalk, the officers testified to no further observations of defendant or the other men that drew their attention (*cf. People v White*, 117 AD3d 425, 425, *lv denied* 23 NY3d 1044; *People v Sims*, 106 AD3d 1473, 1473, *appeal dismissed* 22 NY3d 992; *Johnston*, 103 AD3d at 1203; *Randolph*, 278 AD2d at 52) and, to the extent that the court found that defendant displayed any nervous or evasive behavior upon initially seeing the officers, we conclude that such a finding is unsupported by the record.  We agree with defendant that the officers lacked other attendant circumstances to arouse their interest inasmuch as the encounter occurred at 6:30 in the evening rather than late at night and there was automobile traffic in the area at that time (*cf. De Bour*, 40 NY2d at 220; *People v Riddick*, 70 AD3d 1421, 1422, *lv denied* 14 NY3d 844).  The suppression hearing testimony further established that the officers were not responding to a dispatch with a description of a suspect in the area matching defendant's appearance (*cf. Howard*, 129 AD3d at 1654; *People v Burnett*, 126 AD3d 1491, 1491-1492).  We thus conclude that the officers lacked an objective, credible reason for the level one approach and request for information (*see People v Laviscount*, 116 AD3d 976, 978-979, *lv denied* 24 NY3d 962; *People v Larmond*, 106 AD3d 934, 934, *lv denied* 21 NY3d 1043; *Matter of Michael F.*, 84 AD3d 468, 468).  Thus, the court erred in refusing to suppress the handgun and defendant's subsequent oral statements to police.

In light of our determination that the court should have granted defendant's motion seeking to suppress physical evidence and his supplemental motion seeking to suppress his oral statements to police, defendant's guilty plea must be vacated (*see Riddick*, 70 AD3d at 1424).  Further, inasmuch as our determination results in the suppression of all evidence in support of the crime charged, the indictment must be dismissed (*see People v Hightower*, ___ AD3d ___, ___ [Feb. 11, 2016]).  We therefore remit the matter to Supreme Court for proceedings pursuant to CPL 470.45.

Entered:  March 25, 2016                    Frances E. Cafarell
                                            Clerk of the Court