MEMORANDUM.
***965 The order of the Appellate Division, insofar as appealed from, should be affirmed.
Police were conducting a vertical patrol of a New York City Housing Authority building in a high crime area and interviewing tenants in search of a robbery suspect in an investigation unrelated to this case. Defendant got off the elevator, observed the police officers-who were approximately eight feet away with shields displayed-and immediately retreated into the elevator. Defendant ignored an officer's request that he hold the door and instead "kept pushing the button" and the elevator doors closed. In light of this behavior, as well as the building's history of narcotics and trespass activity, the police followed defendant to determine whether he lived in the building. Rather than respond to the officer's questions, defendant turned away from the police to face the wall, held his head down with the hood of his sweatshirt over his head, and kept his hands hidden inside his sweatshirt. The officer immediately noticed a large bulge in defendant's right arm, which defendant held stiffly and straight down from his body in an unnatural position. The officer testified that defendant's behavior in conjunction with his refusal to respond to the officer's repeated requests for defendant to indicate whether he had any weapons, and to show his hands, led him to feel compelled for his safety to confirm whether defendant had a weapon by conducting a limited search of defendant's wrist area. When the officer touched the defendant's wrist, he felt a metal object, ***966 lifted the sleeve of the defendant's shirt, saw the point of a blade, and ordered him to "drop it." Defendant did not comply and officers had to pull the weapon-a two-foot-long machete-from defendant's shirt. Minutes later, the officer learned of a recent robbery in the area involving a machete-wielding suspect wearing clothing matching that worn by defendant. Defendant was charged and convicted in connection with that robbery. *774 The trial court, after hearing a police officer's testimony regarding the encounter, applied our framework for evaluating the propriety of police-initiated encounters with private citizens (see People v. De Bour, 40 N.Y.2d 210, 386 N.Y.S.2d 375, 352 N.E.2d 562 [1976] ), and found that "all of the police actions were justified from their inception." A majority of the Appellate Division panel affirmed, finding that "[based] on all of the attendant circumstances, including the manner in which defendant was holding his arm and his refusal to state whether he was armed or to show his hands when asked," the officers were authorized to search defendant for a weapon ( People v. Perez, 142 A.D.3d 410, 415-416, 37 N.Y.S.3d 243 [1st Dept. 2016] ). The issue on appeal to this Court, whether the police conduct conformed to De Bour, presents a mixed question of law and fact (see People v. Barksdale, 26 N.Y.3d 139, 143, 41 N.E.3d 1111 [2015] ). Accordingly, "our review is limited to whether there is evidence in the record supporting the lower courts' determinations" ( id. [internal quotation marks and citations omitted] ).
Keeping in mind that "police-citizen encounters are dynamic situations during which the degree of belief possessed at the point of inception may blossom by virtue of responses or other matters which authorize and indeed require additional action as the scenario unfolds" ( De Bour, 40 N.Y.2d at 225, 386 N.Y.S.2d 375, 352 N.E.2d 562 ), there is support in the record for the determination that the circumstances as testified to by the arresting officer, which Supreme Court found credible, provided the requisite level of support to satisfy the applicable level of intrusion.
To the extent that the lower court may have erred in admitting the statement defendant made at the precinct prior to being given any Miranda warnings, any error was harmless (see People v. Crimmins, 36 N.Y.2d 230, 237, 367 N.Y.S.2d 213, 326 N.E.2d 787 [1975] ).