People v Ahmad (2021 NY Slip Op 02404)





People v Ahmad


2021 NY Slip Op 02404


Decided on April 21, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on April 21, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

CHERYL E. CHAMBERS, J.P.
ROBERT J. MILLER
HECTOR D. LASALLE
ANGELA G. IANNACCI, JJ.


2019-02697
 (Ind. No. 850/18)

[*1]The People of the State of New York, respondent,
v
Syed Ahmad, appellant.


N. Scott Banks, Hempstead, NY (Tammy Feman and Argun M. Ulgen of counsel), for appellant.
Madeline Singas, District Attorney, Mineola, NY (Yael V. Levy and Donald Berk of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Nassau County (Angelo A. Delligatti, J.), rendered January 28, 2019, convicting him of criminal possession of a weapon in the third degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of those branches of the defendant's omnibus motion which were to suppress physical evidence and statements he made to law enforcement officials.
ORDERED that the judgment is reversed, on the law, those branches of the defendant's omnibus motion which were to suppress physical evidence and statements he made to law enforcement officials are granted, and the indictment is dismissed.
The defendant was charged with criminal possession of a weapon in the third degree based on an allegation that on January 31, 2018, he knowingly possessed a gravity knife. The defendant moved, inter alia, to suppress the knife, which was recovered from his vehicle, as well as his statements to law enforcement officials.
At the suppression hearing, the People elicited testimony from Police Officer Christopher Paolillo that he responded to Valley Road in Glen Cove based upon a report of a suspicious vehicle following someone. Officer Paolillo acknowledged that there was no description of the vehicle provided. Upon responding to Valley Road, Officer Paolillo observed a vehicle, later identified as the defendant's vehicle, slowly traveling down the road in the opposite direction from that which Officer Paolillo's patrol vehicle was traveling, toward his patrol vehicle. Officer Paolillo testified that there were no other vehicles on Valley Road at that time. Officer Paolillo pulled up next to the defendant's vehicle and the defendant slowed down. Officer Paolillo rolled down his window and the defendant rolled down his window, and Officer Paolillo began questioning the defendant, whose vehicle was still moving, inching slowly forward. In response to Officer Paolillo's questions, the defendant stated that he was trying to "find his way out," that he had followed a limousine onto Valley Road, and that he had thought the limousine wanted him to follow it. At that point, Officer Paolillo backed up his patrol vehicle and parked it in front of the defendant's vehicle. Officer Paolillo exited his patrol vehicle and told the defendant to put his vehicle into park. Officer Paolillo observed the defendant leaning toward the passenger side of the vehicle. Officer Paolillo [*2]walked to the defendant's driver's side window and asked the defendant for his identification, which he produced, and after the defendant refused to answer any further questions Officer Paolillo asked him to exit the vehicle. Officer Paolillo then observed an open compartment underneath the passenger seat of the defendant's vehicle, and a knife in the compartment, however he could not tell what type of knife it was because he only saw the handle. Officer Paolillo then entered the vehicle, retrieved the knife, and attempted to open it, which he was able to do by using a downward motion.
At the close of the hearing, the Supreme Court found that the evidence at the hearing demonstrated that Officer Paolillo had probable cause to arrest the defendant because he was traveling on Valley Road, which was private property upon which trespass was forbidden, and that the officer was justified in concluding that the defendant neither lived there, nor knew anyone who did. The court denied those branches of the defendant's omnibus motion which were to suppress the knife and his statements to law enforcement officials.
Following a jury trial, the defendant was convicted of criminal possession of a weapon in the third degree. On appeal, the defendant argues, among other things, that the Supreme Court erred in denying those branches of his omnibus motion which were to suppress the gravity knife and his statements to law enforcement officials, on the ground that Officer Paolillo lacked reasonable suspicion to stop his vehicle.
"'It is fundamental that in order to stop a vehicle the police must have a "reasonable suspicion," based on objective evidence, that the occupants were involved in a felony or misdemeanor'" (People v Figueroa, 38 AD3d 796, 797, quoting People v Coleman, 183 AD2d 840, 841; see People v Harrison, 57 NY2d 470, 476). "Reasonable suspicion has been defined as 'that quantum of knowledge sufficient to induce an ordinarily prudent and cautious [person] under the circumstances to believe criminal activity is at hand'" (People v Bowers, 148 AD3d 1042, 1043, quoting People v Martinez, 80 NY2d 444, 448).
Here, the testimony at the hearing established that the defendant did not voluntarily stop his vehicle, but rather that Officer Paolillo stopped the defendant's vehicle when he backed up his patrol vehicle and parked in front of the defendant's vehicle to stop it from moving. Accordingly, the Supreme Court should not have analyzed this encounter pursuant to People v De Bour (40 NY2d 210, 223), but rather should have applied the above-referenced legal principles which apply to vehicle stops.
Applying those principles here, we find that Officer Paolillo lacked reasonable suspicion to stop the defendant's vehicle (see People v Bailey, 164 AD3d 815, 818; People v Lindsey, 13 AD3d 651, 651-652; People v Clark, 133 AD2d 955). The evidence at the hearing established that at the time Officer Paolillo stopped the defendant's vehicle on Valley Road, the defendant was not following anyone, and was merely driving slowly down the road. In the initial call to the police, there was no vehicle description provided, and thus Officer Paolillo could not have known if this was the vehicle which had been observed following someone. Contrary to the Supreme Court's conclusion, the testimony at the hearing did not establish that Valley Road was private property upon which trespass was forbidden. Officer Paolillo did not testify that he suspected the defendant of criminal trespass, or that Valley Road was a private road. When asked who generally uses the road, the officer testified "mainly the residents." When asked how the traffic conditions were on the road, the officer testified "[v]ery light. Like I said, if anybody is down there, it's basically they live down there." The officer described that there were gates on the side of the road, which were open, and a sign which states "North Country Colony, Private Property, No Trespassing." However, the officer was not asked whether this sign referred to the roadway itself or the residential properties located thereon. The officer provided no testimony which could have allowed the court to conclude that if someone was simply driving on Valley Road, it would be an act of trespass. Additionally, based upon the officer's testimony, it was clear that Valley Road is not a dead end, but rather it has outlets to other roads.
Since there was nothing observed by Officer Paolillo which could have allowed him to conclude that criminal activity was at hand, the officer lacked reasonable suspicion to stop the [*3]defendant's vehicle (see People v Bailey, 164 AD3d at 818; People v Lindsey, 13 AD3d at 651-652; People v Clark, 133 AD2d 955).
Accordingly, the Supreme Court should have granted those branches of the defendant's omnibus motion which were to suppress the physical evidence and his statements made to law enforcement officials (see People v Bailey, 164 AD3d at 818; People v Lindsey, 13 AD3d at 652; People v Clark, 133 AD2d at 955). Without this evidence, there would not be legally sufficient evidence to prove the defendant's guilt. Accordingly, the indictment must be dismissed (see People v Jones, 164 AD3d 1363, 1366).
On May 30, 2019, New York State Assembly Bill 5944 came into effect, which amended the Penal Law by removing gravity knives from subsection one of Penal Law section 265.01 (see L 2019, ch 34, § 1 [eff May 30, 2019]). The record demonstrates that, as a result of this change in the law, and while this appeal was pending, the People moved in the Supreme Court, pursuant to CPL 440.10(1)(h), to vacate the defendant's conviction. The People contended that, although the bill decriminalizing the simple possession of gravity knives did not apply retroactively, for numerous reasons "the just and equitable course of action here—the 'right' thing to do—is to vacate the defendant's conviction." The court denied this motion, finding that it had no authority under CPL 440.10 to vacate a judgment of conviction upon a motion made by the People (see CPL 440.10[1]). On appeal, the People, notwithstanding their prior position taken on the CPL 440.10 motion, oppose the reversal of the defendant's conviction In light of our determination, we need not reach this contention, nor the defendant's remaining contentions.
CHAMBERS, J.P., MILLER, LASALLE and IANNACCI, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court