People v Dixon (2022 NY Slip Op 01944)





People v Dixon


2022 NY Slip Op 01944


Decided on March 18, 2022


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 18, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: PERADOTTO, J.P., LINDLEY, CURRAN, AND WINSLOW, JJ.


1164 KA 19-00931

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
PETER DIXON, DEFENDANT-APPELLANT. 






FRANK H. HISCOCK LEGAL AID SOCIETY, SYRACUSE (JOHN R. LEWIS OF COUNSEL), FOR DEFENDANT-APPELLANT. 
WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (JESSICA N. CARBONE OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Onondaga County Court (Stephen J. Dougherty, J.), rendered April 12, 2019. The judgment convicted defendant, upon a jury verdict, of criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the fifth degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.
Memorandum: Defendant appeals from a judgment convicting him, upon a jury verdict, of criminal possession of a controlled substance in the third degree (Penal Law § 220.16 [1]) and criminal possession of a controlled substance in the fifth degree (§ 220.06 [5]). The conviction arises from an incident in which a police officer, accompanied by other officers on patrol, pulled into the parking lot of a cocktail lounge and, after observing defendant sitting in a parked vehicle, approached the vehicle. The officer began to ask defendant for his name, identification and reason for being in the parking lot, when he smelled burning marihuana through a slightly opened window of the vehicle. The officer requested that defendant exit the vehicle, and then discovered during a further interaction that defendant possessed a quantity of cocaine. We affirm.
Defendant primarily contends that County Court erred in refusing to suppress physical evidence obtained during the encounter because the police lacked the requisite objective, credible reason to approach the vehicle and request information from him. We reject that contention. "In evaluating police conduct, a court 'must determine whether the action taken was justified in its inception and at every subsequent stage of the encounter' " (People v Savage, 137 AD3d 1637, 1638 [4th Dept 2016]; see People v De Bour, 40 NY2d 210, 222-223 [1976]). At the first level of a police-civilian encounter, i.e., a request for information, a police officer may approach an individual "when there is some objective credible reason for that interference not necessarily indicative of criminality" (De Bour, 40 NY2d at 223), and "[t]he request may 'involve[ ] basic, nonthreatening questions regarding, for instance, identity, address or destination' " (People v Garcia, 20 NY3d 317, 322 [2012], quoting People v Hollman, 79 NY2d 181, 185 [1992]; see People v McIntosh, 96 NY2d 521, 525 [2001]). Although the first level "sets a low bar for an initial encounter" (People v Barksdale, 26 NY3d 139, 143 [2015]), the Court of Appeals has nevertheless observed that, "[i]n determining the legality of an encounter under De Bour and Hollman, it has been crucial whether a nexus to [defendant's] conduct existed, that is, whether the police were aware of or observed conduct which provided a particularized reason to request information. The fact that an encounter occurred in a high-crime vicinity, without more, has not passed De Bour and Hollman scrutiny" (McIntosh, 96 NY2d at 526-527; see Savage, 137 AD3d at 1638). The second level of a police-civilian encounter, "the common-law right to inquire, is activated by a founded suspicion that criminal activity is afoot and permits a somewhat greater intrusion in that a[n officer] is entitled to interfere with a [civilian] to the extent necessary to gain explanatory information, but short of a forcible seizure" (De Bour, 40 NY2d at 223).
As an initial matter, to the extent that defendant contends that the officer engaged in a level two intrusion from the outset of the encounter, that contention lacks merit. "The approach of [an] occupant[] of a stopped or parked vehicle to request information is analyzed under the first [level] of the De Bour hierarchy . . . and need only be justified by an 'articulable basis,' meaning an 'objective, credible reason not necessarily indicative of criminality' " (People v Grady, 272 AD2d 952, 952 [4th Dept 2000], lv denied 95 NY2d 905 [2000], quoting People v Ocasio, 85 NY2d 982, 985 [1995]; see People v Witt, 129 AD3d 1449, 1450 [4th Dept 2015], lv denied 26 NY3d 937 [2015]). Here, the record of the suppression hearing establishes that the officer did not ask "pointed questions that would lead the person approached reasonably to believe that he or she [was] suspected of some wrongdoing and [was] the focus of the officer's investigation" (Hollman, 79 NY2d at 185; see People v Karagoz, 143 AD3d 912, 914 [2d Dept 2016]). Rather, the officer engaged in a level one request for information by making the basic, nonthreatening request for defendant's identification information and his reason for being in the parking lot (see Hollman, 79 NY2d at 191).
Contrary to defendant's primary contention, the officer had an objective, credible reason for approaching the parked vehicle and requesting information, thereby rendering the police encounter lawful at its inception (see Witt, 129 AD3d at 1450). Not only was defendant's vehicle located in a high-crime area and parked at an establishment around which criminal activity was known to occur, but the police also had an active trespass affidavit on file for the cocktail lounge that allowed them to deal with the issues that occurred there, the parking lot was governed by a visible no loitering sign, and defendant was observed, albeit briefly, sitting in the lone occupied vehicle without making any attempt to go inside the establishment, thereby suggesting the possibility that defendant lacked a legitimate reason to be there (see Barksdale, 26 NY3d at 141-144; Ocasio, 85 NY2d at 983-985; People v Layou, 134 AD3d 1510, 1511-1512 [4th Dept 2015], lv denied 27 NY3d 1070 [2016], reconsideration denied 28 NY3d 932 [2016]). Given the abovementioned additional observations, providing the police with a particularized reason to request information from defendant beyond his mere presence in a high-crime area, the case before us is distinguishable from those upon which defendant relies (cf. People v King, 199 AD3d 1454, 1454 [4th Dept 2021]; People v Stover, 181 AD3d 1061, 1063-1064 [3d Dept 2020]; Savage, 137 AD3d at 1639; People v Miles, 82 AD3d 1010, 1010-1011 [2d Dept 2011]). Based on the foregoing, we conclude that "the totality of the information known to the police prior to entering the parking lot and their observations upon doing so provided an articulable reason for approaching the vehicle in question to request information with respect to the identity of the occupant[] and [his] purpose for being in the area" (People v Ramos, 60 AD3d 1317, 1317 [4th Dept 2009], lv denied 12 NY3d 928 [2009]).
Contrary to defendant's further contention, which is preserved for our review (see People v Callahan, 134 AD3d 1432, 1432 [4th Dept 2015]; cf. People v Nunez, 261 AD2d 127, 127 [1st Dept 1999], lv denied 93 NY2d 1004 [1999]; People v Matthews, 249 AD2d 963, 963 [4th Dept 1998]), we conclude that the court did not abuse its discretion in denying defense counsel's request to adjourn the rescheduled trial on the drug charges (see People v Resto, 147 AD3d 1331, 1332 [4th Dept 2017], lv denied 29 NY3d 1000 [2017], reconsideration denied 29 NY3d 1094 [2017]; People v Garcia, 101 AD3d 1604, 1605 [4th Dept 2012], lv denied 20 NY3d 1098 [2013]; see generally People v Spears, 64 NY2d 698, 699-700 [1984]).
Finally, inasmuch as the certificate of conviction and uniform sentence and commitment form incorrectly reflect that defendant was sentenced as a second felony offender, they must be amended to reflect that he was actually sentenced as a second felony drug offender previously convicted of a violent felony offense (see People v Curry, 192 AD3d 1649, 1652 [4th Dept 2021], lv denied 37 NY3d 955 [2021]; People v Martinez, 166 AD3d 1558, 1560 [4th Dept 2018]).
Entered: March 18, 2022
Ann Dillon Flynn
Clerk of the Court