People v Taylor (2025 NY Slip Op 02937)

People v Taylor

2025 NY Slip Op 02937

Decided on May 14, 2025

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on May 14, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ROBERT J. MILLER, J.P.
WILLIAM G. FORD
HELEN VOUTSINAS
LAURENCE L. LOVE, JJ.

2023-02874
 (Ind. No. 36/18)

[*1]The People of the State of New York, respondent,
v
Ramond Taylor, appellant.

Twyla Carter, New York, NY (Iván Pantoja of counsel), for appellant.
Melinda Katz, District Attorney, Kew Gardens, NY (Johnnette Traill, William H. Branigan, and Lucy E. Pannes of counsel), for respondent.

DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Queens County (Evelyn L. Braun, J.), rendered February 27, 2023, convicting him of criminal possession of a weapon in the second degree, after a nonjury trial, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress physical evidence.
ORDERED that the judgment is reversed, on the law, that branch of the defendant's omnibus motion which was to suppress physical evidence is granted, the indictment is dismissed, and the matter is remitted to the Supreme Court, Queens County, for further proceedings consistent with CPL 160.50.
At a suppression hearing, New York Police Department Detective Edwin Espinal testified that in the early morning hours of November 25, 2017, he and his partners were patrolling Queens County in an unmarked police vehicle. While driving down 193rd Street toward a dead end, Detective Espinal spotted a vehicle illegally parked in the middle of the dead end's cul-de-sac. Detective Espinal testified that there appeared to be an individual in the driver's seat and another individual standing outside the vehicle by the driver's window. Detective Espinal observed that the individual standing outside the vehicle, who was later identified as the defendant, was holding a black object in his right hand, although Detective Espinal could not identify the object. Detective Espinal testified that when the defendant made eye contact with him, the defendant put the object into the right front pocket of the jacket that he was wearing and proceeded to walk toward the police vehicle with his hands in his jacket pockets. As the defendant continued to walk toward the police vehicle, Detective Espinal exited the vehicle and directed the defendant to take his hands out of his jacket pockets and put his hands up. Although the defendant initially complied, as Detective Espinal got closer, the defendant began to reach down toward his right jacket pocket. Upon seeing the defendant reach for his jacket pocket, Detective Espinal grabbed the pocket and felt a firearm inside. Detective Espinal withdrew a firearm from the defendant's pocket and instructed one of his partners to place the defendant under arrest.
After the suppression hearing, the Supreme Court, inter alia, denied suppression of the firearm removed from the defendant's pocket.
"On a motion to suppress, the People bear the burden of going forward to establish the legality of police conduct in the first instance" (People v Lewis, 208 AD3d 595, 599 [internal quotation marks omitted]). In People v De Bour (40 NY2d 210), the Court of Appeals established a graduated four-level test for evaluating the propriety of police encounters with civilians (see People v Moore, 6 NY3d 496, 498-499). "[L]evel one permits a police officer to request information from an individual and merely requires that the request be supported by an objective, credible reason, not necessarily indicative of criminality; level two, the common-law right of inquiry, permits a somewhat greater intrusion and requires a founded suspicion that criminal activity is afoot; level three authorizes an officer to forcibly stop and detain an individual, and requires a reasonable suspicion that the particular individual was involved in a felony or misdemeanor; level four, arrest, requires probable cause to believe that the person to be arrested has committed a crime" (id.; see People v De Bour, 40 NY2d at 223; People v Rhames, 196 AD3d 510, 512). "To conduct a stop and frisk under De Bour level three, the police must at a minimum have reasonable suspicion that the particular person has committed or is about to commit a crime or that the person is armed or dangerous" (People v Johnson, 40 NY3d 172, 175-176 [citation and internal quotation marks omitted]). "[R]esolution of this issue requires an evaluation of the totality of the circumstances" (People v Hernandez, 223 AD3d 751, 754).
Here, the issue is whether Detective Espinal had reasonable suspicion that the defendant was involved in a crime and that Detective Espinal was in danger of physical injury by virtue of the defendant being armed so as to justify grabbing the defendant's right jacket pocket (see id. at 753-754, citing CPL 140.50[1], [3]). Even according due deference to the Supreme Court's credibility determinations, Detective Espinal did not have the required reasonable suspicion to frisk the defendant. Detective Espinal's testimony is clear. He saw the defendant outside the illegally parked vehicle and watched as the defendant placed a black object in his jacket pocket. Detective Espinal did not testify as to what he thought the object was or whether he had any reasonable suspicion to believe that the object was a weapon of any kind, let alone a firearm. The only instance of illegality that Detective Espinal testified to was the illegally parked vehicle, which would not have provided the officers with a basis to frisk the defendant (see generally People v Ahmad, 193 AD3d 961). Insofar as it can be inferred from Detective Espinal's testimony that the stop of the defendant was appropriate because the neighborhood was a high crime area, our courts have not accepted this as a sufficient justification for informational requests, let alone the search at issue herein (see People v McIntosh, 96 NY2d 521, 526). And while Detective Espinal did testify to the fact that he grabbed the defendant's pocket out of apprehension for the safety of himself and his fellow officers, protective pat-downs must also be supported by a reasonable suspicion that the defendant was armed or posed a threat to the officers' safety (see People v Goldson, 136 AD3d 1053). Although Detective Espinal testified that the defendant placed the black object in his jacket pocket, which may suggest that criminal activity was afoot under certain circumstances or give an officer reason to proceed with caution, this did not provide Detective Espinal with the requisite reasonable suspicion to grab the defendant's pocket (see People v Hernandez, 223 AD3d at 754-755, citing People v Johnson, 40 NY3d at 174-177). Accordingly, the subsequent arrest was unlawful, and the firearm should have been suppressed.
The defendant's remaining contentions either are without merit or need not be reached in light of our determination.
MILLER, J.P., FORD, VOUTSINAS and LOVE, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court