People v Robinson (2026 NY Slip Op 01693)

People v Robinson

2026 NY Slip Op 01693

Decided on March 20, 2026

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 20, 2026
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., LINDLEY, OGDEN, NOWAK, AND DELCONTE, JJ.

970 KA 22-00848

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
vEDWARD ROBINSON, DEFENDANT-APPELLANT. 

FRANK H. HISCOCK LEGAL AID SOCIETY, SYRACUSE (PHILIP ROTHSCHILD OF COUNSEL), FOR DEFENDANT-APPELLANT.
WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (ELISABETH DANNAN OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Onondaga County Court (Matthew J. Doran, J.), rendered November 6, 2020. The judgment convicted defendant upon a jury verdict of criminal possession of a weapon in the second degree and criminal possession of a controlled substance in the third degree. 
It is hereby ORDERED that the judgment so appealed from is reversed on the law, those parts of the omnibus motion seeking to suppress physical evidence and statements are granted, the indictment is dismissed, and the matter is remitted to Onondaga County Court for proceedings pursuant to CPL 470.45.
Memorandum: On appeal from a judgment convicting him upon a jury verdict of criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]) and criminal possession of a controlled substance in the third degree (§ 220.16 [1]), defendant contends that County Court erred in refusing to suppress physical evidence as well as statements he made subsequent to his arrest because the officers lacked the requisite objective, credible reason to approach his parked vehicle to request information (see People v De Bour, 40 NY2d 210, 223 [1976]; see also People v Hollman, 79 NY2d 181, 184-185 [1992]). We agree.
The testimony at the suppression hearing established that, at approximately 9:45 p.m. on July 27, 2018, two Syracuse Police Department (SPD) officers were patrolling around an apartment complex that was in what one officer described as a "high crime area . . . between two gang territories." At that time, there was a "trespass affidavit" on file with the SPD, i.e., in this instance, a statement signed under the penalty of perjury by a partially identified property manager that requested that any person "found on or in the property . . . who is not a tenant, guest of a tenant, or on the property with legitimate business, be arrested and prosecuted for trespass." The officers approached defendant, approximately 30 seconds after they entered the parking lot, and observed him sitting alone in an idling car, ostensibly for the purpose of determining whether defendant was trespassing. While defendant provided one officer his identification establishing that he was a resident of the apartment complex, the other officer observed a bag with a beige substance that the officer believed to be cocaine in the pocket of the driver's door. The officers directed defendant to exit the vehicle, and during the ensuing search of defendant's person the police officers found a loaded handgun in his pocket and a bag of cocaine in his underwear.
"In evaluating police conduct, a court 'must determine whether the action taken was justified in its inception and at every subsequent stage of the encounter' " (People v Savage, 137 AD3d 1637, 1638 [4th Dept 2016]; see De Bour, 40 NY2d at 222-223). "The approach of [an] occupant[ ] of a stopped or parked vehicle to request information is analyzed under the first [level] of the De Bour hierarchy . . . and need only be justified by an 'articulable basis,' meaning an 'objective, credible reason not necessarily indicative of criminality' " (People v Grady, 272 [*2]AD2d 952, 952 [4th Dept 2000], lv denied 95 NY2d 905 [2000], quoting People v Ocasio, 85 NY2d 982, 985 [1995]; see Hollman, 79 NY2d at 184-185; People v Dixon, 203 AD3d 1726, 1727 [4th Dept 2022], lv denied 38 NY3d 1032 [2022]). Although the first level "sets a low bar for an initial encounter" (People v Barksdale, 26 NY3d 139, 143 [2015]), the Court of Appeals has nevertheless observed that, "[i]n determining the legality of an encounter under De Bour and Hollman, it has been crucial whether a nexus to [defendant's] conduct existed, that is, whether the police were aware of or observed conduct which provided a particularized reason to request information" (People v McIntosh, 96 NY2d 521, 526-527 [2001]; see Savage, 137 AD3d 1638).
To that end, "[t]he fact that an encounter occurred in a high crime vicinity, without more, has not passed De Bour and Hollman scrutiny" (McIntosh, 96 NY2d at 527; see Savage, 137 AD3d at 1638). Thus, the officer's testimony that the apartment complex was in a high-crime area did not justify approaching defendant. The trespass affidavit failed to afford the officers any more particularized reason for approaching defendant. Therein, although the property manager for the apartment complex stated generally that there "was reason to believe that persons are congregating on the . . . property . . . [who] do not reside at said property," there was no allegation in the trespass affidavit that the property was, for example, "plagued by illegal drug trade" or gang violence (People v Roque, 99 NY2d 50, 52 [2002]; see generally Barksdale, 26 NY3d at 142 n 2). Indeed, the property manager did not specify any prior or ongoing incidents of criminal activity on the premises, but instead expressed a general belief that persons might be "congregating on the property," which is a multi-building residential apartment complex, "without [the property manager's] permission." The property manager nonetheless also acknowledged in the trespass affidavit that non-residents were often permissibly on the property, such as guests of tenants. Thus, defendant was not "parked at an establishment around which criminal activity was known to occur" (Dixon, 203 AD3d at 1728). Further, the officers observed defendant momentary idling in a vehicle in a publicly accessible parking lot on a summer evening outside a residential apartment complex (see Savage, 137 AD3d at 1639), not "in a private space restricted by signage and a lock" (Barksdale, 26 NY3d at 143). Thus, nothing in the officers' observation of defendant's conduct, even considered in light of the assertions in the trespass affidavit, "provided a particularized reason to request information" (McIntosh, 96 NY2d at 527 [emphasis added]). Instead, one of the approaching officers agreed at the suppression hearing that he believed that the trespass affidavit provided "blanket authority to approach anyone that is at [the apartment complex]." Under the facts of this case, a determination that the trespass affidavit permitted the officers' request for information from defendant would improperly negate the necessity that law enforcement officers comply with the minimal requirement of having an "objective, credible reason, not necessarily indicative of criminality" to justify a level one encounter (Hollman, 79 NY2d at 184; see De Bour, 40 NY2d at 223; Savage, 137 AD3d at 1639). We therefore conclude that the court should have granted those parts of defendant's omnibus motion seeking to suppress physical evidence and his oral statements to the officers.
In light of our determination, defendant's remaining contentions are academic. Further, inasmuch as our determination results in the suppression of all evidence in support of the crimes charged, the indictment must be dismissed (see Savage, 137 AD3d at 1640; People v Hightower, 136 AD3d 1396, 1397 [4th Dept 2016]). We therefore remit the matter to County Court for proceedings pursuant to CPL 470.45.
All concur except Lindley and DelConte, JJ., who dissent and vote to affirm in the following memorandum: We respectfully dissent. In our view, the request for information from defendant by the police officers in this case was lawful based on the holding in People v Barksdale (26 NY3d 139 [2015]). We would therefore affirm the judgment and uphold the denial of defendant's omnibus motion insofar as it sought suppression of contraband, including a loaded firearm recovered from his person, and incriminating statements he made to the police following his arrest.
In Barksdale, the arresting officers observed the defendant standing in the lobby of an apartment building in Manhattan that participated in the trespass affidavit program (TAP) (see id. at 141-142). By participating in TAP, the building's management authorized the police to patrol the premises and arrest trespassers. When observed by the officers, the defendant was not engaged in any suspicious activity; he was just standing in the lobby. The officers approached the defendant and asked what he was doing in the building. Although the defendant said that he [*3]was visiting a friend, he could not provide the officers with the name of his friend. The officers then placed the defendant under arrest for trespassing, leading to the discovery of a weapon in his possession.
In seeking to suppress the weapon, the defendant in Barksdale contended that the police had no legal basis to approach him to request information, but Supreme Court concluded otherwise, as did the First Department (see People v Barksdale, 110 AD3d 498 [1st Dept 2013]), which determined that the officers had an objective credible reason to ask defendant whether he lived in the building (see id. at 498-499). The Court of Appeals affirmed, noting that the police patrol at issue "was intended in part to combat trespassing, that is, 'knowingly enter[ing] or remain[ing] unlawfully in or upon premises' (Penal Law § 140.05), that the building at issue was enrolled in the TAP for the purpose of addressing that problem, and that this branch of the TAP is rooted in tenant protection throughout Manhattan" (Barksdale, 26 NY3d at 144). Under those circumstances, the Court concluded, "a police officer could have identified a trespasser only by requesting information" (id.).
Here, the manager of the apartment complex in question signed a trespass affidavit stating, among other things, that people who did not reside in the complex had been congregating on the property, and the arresting officers testified at the suppression hearing that the property was "a high-crime area . . . between two gang territories." Under the circumstances, we conclude that, pursuant to Barksdale, the officers were justified in approaching defendant in the parking lot to ascertain whether he resided at the apartment complex or whether he was trespassing. Stated otherwise, the officers had "an objective, credible reason, not necessarily indicative of criminality," to approach defendant and request information (People v Hollman, 79 NY2d 181, 184 [1992]), a level one intrusion under People v De Bour (40 NY2d 210, 223 [1976]). The approach was not based on "mere whim, caprice or idle curiosity" (id. at 217).
Although it is true, as the majority points out, that defendant, unlike his counterpart in Barksdale, was not in an enclosed area protected by a lock, that does not make it any less likely that he was trespassing. Indeed, because the defendant in Barksdale was in the lobby of a locked apartment building with no signs of a forced entry, the officers in that case had less reason to suspect trespassing than the officers in our case. Moreover, here, there was evidence that the apartment building subject to the trespass affidavit was in a high-crime area. While the fact that the encounter occurred in a high-crime area does not alone justify a level one police intrusion (see People v McIntosh, 96 NY2d 521, 526-527 [2001]), it is clearly a relevant factor. Here, as in People v Dixon (203 AD3d 1726, 1728 [4th Dept 2022], lv denied 38 NY3d 1032 [2022]), where we relied on Barksdale to determine that the police lawfully requested information from a defendant who was sitting in a vehicle in a parking lot outside a cocktail lounge in a high-crime area, defendant's presence in a high-crime area, coupled with the trespass affidavit, justified the officers' request for information (see also People v Anderson, 306 AD2d 54, 54 [1st Dept 2003], lv denied 100 NY2d 578 [2003]; People v Crawford, 279 AD2d 267, 267 [1st Dept 2001], lv denied 96 NY2d 799 [2001]; People v Tinort, 272 AD2d 206, 206-207 [1st Dept 2000], lv denied 95 NY2d 872 [2000]; People v Greene, 271 AD2d 235, 236 [1st Dept 2000], lv denied 95 NY2d 853 [2000]). While we question whether the Court of Appeals today would reaffirm the holding in Barksdale, which conditions a suspect's right to be left alone by the police upon the existence of a trespass affidavit signed by a third party, we are constrained to follow it.
Entered: March 20, 2026
Ann Dillon Flynn
Clerk of the Court