People v Martinez-Jaquez

2026 NY Slip Op 02045

April 2, 2026

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

The People of the State of New York, Respondent,

v

Samy Martinez-Jaquez, Defendant-Appellant.

Decided and Entered: April 02, 2026

Ind No. 2850/16|Appeal No. 6269|Case No. 2018-02006|

Before: Manzanet-Daniels, J.P., Mendez, Pitt-Burke, Higgitt, Hagler, JJ.

Twyla Carter, The Legal Aid Society, New York (Katheryne M. Martone of counsel), for appellant.

Alvin L. Bragg, Jr., District Attorney, New York (Julia Gorski of counsel), for respondent.

[*1]

Judgment, Supreme Court, New York County (Charles H. Solomon, J.), rendered September 19, 2017, convicting defendant, after a jury trial, of criminal possession of stolen property in the fourth and fifth degrees, two counts of petit larceny, and the unauthorized use of a motor vehicle in the third degree, and sentencing him to an aggregate term of 1 1/3 to 4 years, unanimously reversed, on the law, the motion to suppress granted, and the indictment dismissed.

At the suppression hearing, the arresting officer testified that at approximately 12:30 a.m. on June 30, 2016, he and his partner received a radio transmission that a black Toyota with Pennsylvania license plate JCS1537 had been carjacked, the car was being tracked in real time, and its current location was near West 165th Street and Amsterdam Avenue in Manhattan. No evidence was presented as to the basis for the transmission or how the vehicle was being tracked. The officers responded to that location and saw a man standing by the trunk of a black Toyota with his hands by his waist in an open-air parking lot. A parking lot attendant confirmed that a black Toyota with Pennsylvania license plate had recently entered the lot. The officers then saw the black Toyota trying to exit. The officer stopped the car by drawing his gun, putting his hand up, and telling it to stop. The officer noticed that the Toyota had no front plate, which was not required in Pennsylvania, and a parking receipt on the windshield for the same license plate number as the stolen vehicle.

Defendant was placed under arrest and searched, during which officers discovered vehicle documents not in defendant's name. Defendant later admitted to taking two cars without their owners' permissions and was identified in a lineup.

Defendant subsequently moved to suppress all physical evidence, statements, and identification as fruits of unlawful forcible stop. The court denied suppression, reasoning that the anonymous radio transmission was sufficiently corroborated by the real-time tracking of the car, police observations, and the parking lot attendant's confirmation that a black Toyota with Pennsylvania license plates had entered the lot shortly before the police arrived. We disagree.

[*2]

Defendant's suppression motion should have been granted. The police officer's testimony failed to provide any information that would have corroborated the anonymous radio transmission. Without knowing the source or nature of the tip with respect to either the carjacking report or the real-time tracking, the forcible stop was not justified by a reasonable suspicion (see People v Walls, 37 NY3d 987, 989 [2021]; People v Brown, 172 AD3d 41, 42 [1st Dept 2019], lv denied 33 NY3d 1067 [2019]). The testimony that defendant was standing near the trunk of a black Toyota in a parking lot was not corroborative since such conduct was neither unlawful nor suspicious. The officer's testimony indicated that he only noticed the lack of the front license plate and parking receipt reflecting a matching license number with the carjacked vehicle after he had already forcibly stopped defendant. Thus, this corroborating information cannot justify the officer's actions (see People v McIntosh, 96 NY2d 521, 527 [2001]).

To the extent the People rely on People v Leighton R. (— NY3d —, 2025 NY Slip Op 06534 [2025]), that case is inapposite to the facts of this case. There, the Court held that the appropriate "standard that must be applied to determine whether the police have reasonable suspicion to conduct an automobile stop based upon a contemporaneous report from an anonymous 911 caller," "is whether an anonymous tip is sufficiently reliable to provide reasonable suspicion under the totality of the circumstances" (Leighton R., 2025 NY Slip Op 06534, *1, *4).

[*3]

In reviewing the developing case law, the Leighton R. Court noted that in Navarette v California (572 US 393 [2014]) the Court found an "anonymous 911 call sufficiently reliable to justify a traffic stop where the caller reported that another vehicle had run her off the road and provided a description of the vehicle, including its license plate, as well as the vehicle's approximate location and direction of travel . . . The Court reasoned that, by reporting a specific vehicle, the caller necessarily claimed eyewitness knowledge of the alleged dangerous driving. That basis of knowledge lends significant support to the tip's reliability" (Leighton R, 2025 NY Slip Op 06534, *3 [internal citation and quotation marks omitted]). As further indicia of reliability, Leighton R. noted that Navarette "emphasized the . . . 911 system's capacity to identify and located callers (Leighton R, 2025 NY Slip Op 06534, *3; see also Navarette, 572 US at 400-401). In finding that the totality of circumstances established reasonable suspicion to stop the defendant's vehicle in Leighton R., the Court noted that "[t]he anonymous informant used the 911 system to report that he had 'just been shot,'" which necessarily claimed personal knowledge of the crime (Leighton R, 2025 NY Slip Op 06534, *4). Further, the caller provided a description of the shooter and vehicle, and that the police were able to corroborate that information quickly and "within a block from the reported location" (Leighton R, 2025 NY Slip Op 06534, *4). However, such reasoning is inapplicable here as there was no claim that the officer acted on a 911 call or verified the radio transmission's source of information (see Leighton R., 2025 NY Slip Op 05634, *4 n 3 ["It remains the case that our courts do not 'blithely accept as true the accusations of an informant unless some good reason for doing so has been established,' and therefore a finding of reasonable suspicion must still be based on 'some minimum, reasonable showing' that the anonymous tip is reliable," quoting People v Griminger, 71 NY2d 635, 639 [1988]]).

Because defendant's stop was unlawful, so was the evidence that resulted from it, including physical evidence, identification, and defendant's statements to law enforcement. Since no other admissible evidence exists to establish the crimes of which defendant was accused, and the prosecution would be unable to secure a conviction on the charges, the judgment of conviction must be vacated, and the indictment dismissed (see People v Rodriguez, 41 NY3d 1, 14 [2023]).

THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.

ENTERED: April 2, 2026